## Ex parte BAEZ.

ORIGINAL.

No.     Submitted March 26, 1900.—Decided April 12, 1900.

It is well settled that this court will not proceed to adjudication where there is no subject-matter upon which the judgment of the court can operate: and although the application in this case has not reached that stage, still as it is obvious that before a return to the writ can be made, or any other action can be taken, the restraint of which the petitioner complains would have terminated, the court feels constrained to decline to grant leave to file the petition for a writ of *habeas corpus* and *certiorari;* but, in arriving at this conclusion, it is not to be understood as intimating, in any degree, an opinion on the question of jurisdiction, or the other questions pressed on its attention.

ON March 26 a motion was made for leave to file the following petition for the writ of *habeas corpus* and *certiorari :*
" Your petitioner, Ramon Baez, by Tulio Larrinaga, for him-

self and in his behalf, respectfully shows that he is a native-born inhabitant of the island of Puerto Rico, formerly a dependency of the Kingdom of Spain, but at the time of the occurrences hereinafter narrated belonging to and forming a part of the territory of the United States of America.

" Your petitioner was also formerly a subject of his Imperial Majesty the King of Spain, but since long prior to the occurrences herein complained of and ever since, to and including the present time, he has neither owed nor acknowledged allegiance to any other nation or sovereignty than that of the United States of America.

" Your petitioner represents unto this honorable court that he is wrongfully, improperly, unjustly and illegally imprisoned and restrained of his liberty at Humacoa, in and on said island of Puerto Rico, by one Samuel C. Bothwell, called and styled as and being the marshal of the United States provisional court for the department of Puerto Rico.

" By act of Congress approved April 25, 1898, it was declared that a state of war had existed and then existed between the United States of America and the Kingdom of Spain, and thereafter, in the course of the prosecution of such war, the military forces of the United States invaded and conquered the island of Puerto Rico and have ever since remained in possession and control thereof.

" December 10, 1898, a treaty of peace was signed at Paris, France, between the duly accredited representatives of the United States of America and Her Majesty the Queen Regent of Spain; and the same having been duly reported to the Senate of the United States, ratification thereof was advised by the Senate on February 6, 1899, and, having been ratified by the President of the United States on said date and subsequently by Her Majesty the Queen Regent of Spain, ratifications thereof were exchanged at Washington on the 11th day of April, 1899, and the treaty was proclaimed by the President of the United States on the same day.

" By said treaty it was provided, among other things, as follows:

"' ART. II. Spain cedes to the United States the island of Porto

Rico and other islands now under Spanish sovereignty in the West Indies, . . .'

"'Art. XI. All Spaniards residing in the territories over which Spain by this treaty cedes or relinquishes her sovereignty shall be subject in matters civil as well as criminal to the jurisdiction of the courts of the country wherein they reside, pursuant to the ordinary laws governing the same; and they shall have the right to appear before such courts, and to pursue the same course as citizens of the country to which the courts belong.'

"Prior to the ratification of said treaty of peace and on or about the 12th day of August, 1898, a protocol or agreement between the United States and the Kingdom of Spain was signed at the city of Washington by the representatives of the two nations, under and by virtue of the terms of which a suspension of hostilities between said nations was declared by the President of the United States.

"By article IV of the said protocol it was agreed that Spain should evacuate Porto Rico and that commissioners should be appointed by the signatory powers for the purpose of arranging and carrying out the details of such evacuation.

"Thereafter an evacuation commission was appointed by the President of the United States, and a similar commission was appointed by the government of Spain, and the commissioners subsequently assembled in the city of San Juan, Porto Rico, and duly arranged the terms of such evacuation, which were accepted by the respective governments, and the evacuation and retirement of the Spanish forces from the island of Puerto Rico occurred on the 18th day of October, 1898.

"Thereupon, and on said date, Major General John R. Brooke, commanding the forces of the United States, in compliance with the orders of the President, assumed the government of the said island of Porto Rico, and by General Order No. 1, of said date, established the military 'Department of Puerto Rico.'

"Said order, among other things, contained the following:

"'The provincial and municipal laws, in so far as they affect the settlement of private rights of persons and property and provide for the punishment of crime, will be enforced unless they are incompatible with the changed conditions of Porto

Rico, in which event they may be suspended by the department commander.'

"Your petitioner further shows that after said 12th day of August, 1898, hostilities ceased to exist in the island of Porto Rico between the forces of the United States and of Spain, and that since the 11th day of April, 1899, war has ceased to exist between the nations, and also since the last-named date, if not prior thereto, there has been and is now a condition of peace existing throughout said island of Porto Rico, and there has been neither a state of war with any foreign power in the said island, nor has there been any internal or domestic rebellions, revolutions or dissensions, nor any failure to recognize the authority and sovereignty of the United States.

"Since the occupation of Porto Rico by the United States authorities the civil courts of that island have been in session exercising the same jurisdiction and in substantially the same form as during the Spanish occupation of the island, and such courts were exercising their ordinary civil and criminal jurisdiction during all of the times hereinafter mentioned.

"On the 27th day of June, 1899, by General Order No. 88, of Brigadier General George W. Davis, United States Army, then commanding the department of Porto Rico, and the supreme military authority in said island, there was established a 'United States Provisional Court for the Department of Porto Rico.'

"Said General Order 88, among other things, provides as follows:

" 'Sec. II. The judicial power of the provisional court hereby established shall extend to all cases which would be properly cognizable by the circuit or district courts of the United States under the Constitution, and to all common law offences within the restrictions hereinafter specified.'

" 'Sec. IV. The decisions of said courts shall follow the principles of common law and equity as established by the courts of the United States, and its procedure, rules and records shall conform as nearly as practicable to those observed and kept in said Federal courts.   .   .   .

" 'Sec. V. The provisional court shall consist of three judges,

one of whom shall be known as the law judge, and the other two as associate judges, one United States district attorney, one marshal, one clerk, three deputy clerks, one stenographer and reporter, one interpreter, one bailiff and janitor, and one messenger. The law judge shall preside and shall determine and decide all technical questions of law. A majority vote of the bench shall determine all questions of fact. The jury system may be introduced or dispensed with in any particular case in the discretion of the court.

" 'SEC. VI. The judges of the provisional court shall be clothed with the powers vested in the judges of the circuit or district courts of the United States.

" 'SEC. VII. The district attorney shall be authorized to present to the court information against all parties for violations of United States statutes and regulations. He shall also in like manner present informations for violations of orders issued by the department commander relating to civil matters, which may be referred to him from these headquarters. . . .

" 'SEC. VIII. In order to define more clearly certain branches of the criminal jurisdiction of the provisional court, it is hereby provided that it shall include and be exclusive in the following classes of cases :

" '1st. All offences punishable under the statutory laws of the United States, such as those indicated in paragraph I of this order.

" '2d. Offences committed by or against persons, foreigners or Americans, not residents of this department, but who may be traveling or temporarily sojourning therein, or against the property of non-residents.

" '3d. Offences against the person or property of persons belonging to the army or navy, or those committed by persons belonging to the army or navy, not properly triable by military or naval courts ; but not including minor police offenses.

" '4th. Offences committed by or against foreigners or by or against citizens of another State, district or Territory of the United States, residing in this department.'

" 'SEC. XI. If any party litigant shall feel aggrieved by the judgment or decree of said court, a stay of ninety days shall

be granted such party before the execution of such judgment or decree, upon the filing of a bond by him with sureties in an amount and with such conditions as the court may determine, for the purpose of allowing such party to make application to the Supreme Court of the United States for a writ of certiorari or other suitable process to review such judgment or decree. But if at the end of said ninety days such process has not been issued by the Supreme Court execution shall forthwith issue.'

"'Sec. XVI. The court shall adopt an appropriate seal which shall be procured by the treasurer of the island. The clerk of the court shall have the custody of the seal for use in attesting legal documents in the usual manner.

"'Sec. XVII. In accordance with the provisions of paragraph V of this order the following appointments are announced to take effect July 1st, 1899.'"

[Here followed the designation of a " law judge;" a "provisional United States Attorney;" two military officers as " associate judges;" and another as " clerk."]

"'Private Samuel C. Bothwell, troop D, 5th U. S. cavalry, is detailed on special duty as marshal of the U. S. provisional court.'

"By General Order 216 of said department, dated December 18, 1899, section XI of General Order 88, hereinbefore set forth, was amended so as to read as follows:

"'If any party litigant shall feel aggrieved by the judgment or decree of said court, a stay of ninety days shall be granted such party before the execution of such judgment or decree, upon the filing of a bond by him with sureties in an amount and with such conditions as the court may determine, for the purpose of allowing such party to make application to the Supreme Court of the United States for a writ of certiorari or other suitable process to review such judgment or decree.

"'For good cause, this court may extend the time of filing such application and record in the office of the clerk of the supreme or appellate court aforesaid.

"'The stay of execution granted by this court shall be in force until the final disposition of the case by the supreme or appel-

late court aforesaid, provided that the party availing himself of the provisions of this section shall not be guilty of negligence in prosecuting his application before the said supreme or appellate court.'

"On the 21st day of September, 1899, by General Order 145 of said department, issued by Brigadier General George W. Davis, United States Army, as aforesaid, provision was made for the holding of municipal elections in said island of Porto Rico, and certain rules and regulations governing the right of the inhabitants to vote at such elections and the manner of exercising such suffrage were therein provided for, among others the following:

"'SEC. V. An elector to vote at such elections shall possess the following qualifications:

"'*a.* He must be a *bona fide* male resident of the municipality.

"'*b.* He must be over twenty-one years of age.

"'*c.* He must be a taxpayer of record at the date of his registration, or he must be able to read and write.

"'*d.* He must have resided upon the island of Puerto Rico for two years next preceding the date of his registration, and for the last six months of said two years within the municipality where the election is held.'

"Thereafter, by General Orders 160 of said department, issued October 12, 1899, General Orders 145 were amended so as to read in part as follows:

"'SEC. VIII. He must be a taxpayer of record in the municipality in which he votes at the date of this order, or he must be able to read and write. Persons who pay insular or municipal taxes of any kind, in their own right or name, or in the name of their lawful wife or minor child, or the members of a firm, corporation or copartnership, paying taxes, and the heirs of an estate that pay taxes, are deemed taxpayers under the meaning of this clause. But administrators, guardians, trustees, agents or other persons who pay taxes for other than themselves or their lawful family are not taxpayers within its meaning through such payment.'

"'SEC. XVI. Any person who fraudulently votes, or attempts

or offers to fraudulently vote, or attempts to influence or control others to fraudulently vote, at any public election, shall, upon conviction thereof, be subject to a fine not exceeding one hundred dollars, or to imprisonment at hard labor not exceeding three months, or to both such fine and imprisonment, in the discretion of the court.'

" Thereafter, by special orders of the military authorities commanding the said department, an election was ordered to be held on the 31st day of October, 1899, in the city of Guayama, Porto Rico, for the election of the ordinary municipal officers of said city to fill the offices in the plan of civil government established by the military authority of the United States.

" Your petitioner represents that, being duly qualified in accordance with law and the general orders aforesaid, he voted at said election for the candidates of the party to which he belonged, and thereafter, on or about the 10th day of November, 1899, he was arrested and taken into custody by one Samuel C. Bothwell, marshal of said United States provisional court of the Department of Porto Rico, and brought before said provisional court, and was there charged by the district attorney thereof, in an information or complaint which was read to him, with having illegally voted at the said election in the city of Guayama heretofore mentioned.

" Your petitioner pleaded ' Not guilty' to said charge, and thereafter said United States provisional court proceeded to try him for said alleged offence, although your petitioner objected to the jurisdiction of said court and denied that he had committed any crime or offence cognizable by said court, and further objected on the ground that no presentment or information had been returned by a grand jury, and further that he was deprived of a trial by jury in said cause, a jury trial having been demanded by him and refused by said court.

" After hearing the evidence in said proceeding, said provisional court found your petitioner ' Guilty,' and sentenced him to imprisonment at hard labor in the jail of Humacao, Porto Rico, for a period of thirty days.

" Thereupon, in accordance with the provisions of section XI of General Orders 88, as amended and heretofore referred to,

your petitioner applied for a stay of execution of ninety days, to permit him to make application to this honorable court for a writ of certiorari or other suitable process, to review the action, and to set aside the judgment of said provisional court.

" Such application was granted ; and the time allowed under said section having expired, your petitioner has been taken into custody by the said Samuel C. Bothwell, marshal as aforesaid, and is by him now unlawfully restrained of his liberty and compelled to. perform infamous tasks.

" The proceedings of said United States provisional court are set forth at large in the duly certified copy of the transcript of the record in said court submitted herewith.

" Your petitioner further alleges that he is advised that said United States Provisional Court for the Department of Porto Rico had no jurisdiction or lawful authority under the Constitution and laws of the United States to cause the arrest of your petitioner or to proceed against him in manner and form aforesaid, and that said pretended process, arrest, order, trial and judgment, and warrant whereby your petitioner was committed to the custody of said Samuel C. Bothwell, and whereby, in custody of said Samuel C. Bothwell, he is imprisoned and restrained of his liberty, as aforesaid, were and are, each and all of them, in violation of the Constitution of the United States and the just rights of your petitioner, and are without authority of law and void.

" Your petitioner further alleges that said United States provisional court had no jurisdiction to try him for the alleged offence with which he is charged for the reasons following, among others : "

[The reasons were here set forth at length.]

" Your petitioner further avers that more than thirty other persons, residents of said island of Porto Rico, were apprehended and tried by said provisional court upon the same or similar charges to those preferred against him, and such persons were likewise found guilty and sentenced to undergo like punishment, but the sentences of the court in such other cases have been stayed pending the determination of your petitioner's application herein,"

[Here followed the prayer.]

The petition was signed : " Ramon Baez, by Tulio Larrinaga ;" and was verified as follows :

" DISTRICT OF COLUMBIA, *ss :*

" Tulio Larrinaga, being duly sworn, deposes and says :

" That he is an inhabitant of Porto Rico and knows the petitioner, Ramon Baez ;

" He has read the foregoing petition by him subscribed and knows the contents thereof, and —

" That the matters and things therein stated are true of his own knowledge except as to matters therein stated on information or belief, and as to those matters he believes them to be true.

" Further, this petition is signed and verified by him for and on behalf of the said Ramon Baez for the reason that the petitioner is confined in the island of Porto Rico, and to delay this application by sending the same for the signature and affidavit of the petitioner himself would greatly retard, if not entirely defeat, the relief thereby sought to be obtained.

" TULIO LARRINAGA."

Subscribed and sworn to before a notary public March 24, A. D. 1900.

*Mr. Frederic D. McKenney* for the motion.

*Mr. Solicitor General* opposing.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Application to file this petition was made to the court on March 26, when, under pressure of the mass of business under advisement, we were about to take a recess until April 9, of which recess the bar had been previously advised.

No notice of the application having been given, on suggestion of counsel for the United States, leave was granted, according to the usual course, and in view of the conceded importance of the questions involved, to submit a brief in opposition within a

week, and three days were allowed counsel for petitioner to reply. These briefs were subsequently duly filed.

It appears from the petition and accompanying papers that the alleged proceedings against petitioner were stayed at his instance, from December 11 until March 16 to enable him to apply to this court in the premises, but no such application was made. And it further appears that petitioner was not restrained of his liberty until up to March 16, and that such restraint was to continue for thirty days from that date, which would expire April 15.

The petition is not signed or verified by Baez, but on his behalf, and the affidavit does not state that the application is made by authority or at the request of Baez, or any facts showing that he was unable to make it, except the averment by affiant that " this petition is signed and verified by him for and on behalf of the said Ramon Baez for the reason that the petitioner is confined in the island of Porto Rico, and to delay this application by sending the same for the signature and affidavit of the petitioner himself would greatly retard, if not entirely defeat, the relief thereby sought to be obtained." The affidavit was sworn to on the 24th of March in the District of Columbia.

Assuming, however, that the application is made in accordance with the wishes of Baez, we should have been better satisfied if the delay in the presentation of the petition had been accounted for. The fact that on March 24 it was impracticable to send to Porto Rico to petitioner for him to act, does not explain why the assertion of his alleged rights was delayed so long, but rather shows that our interposition would be unavailing, if we took jurisdiction.

Section 756 of the Revised Statutes provides in relation to the writ of *habeas corpus:* " Any person to whom such writ is directed shall make due return thereof within three days thereafter, unless the party be detained beyond the distance of twenty miles ; and if beyond that distance and not beyond the distance of a hundred miles, within ten days ; and if beyond the distance of a hundred miles, within twenty days." This section was taken almost literally from the Habeas Corpus Act, chap. 2 of the 31st Car. II, which was designed to remedy procrastination

and trifling with the writ.   Prior to that act the mode of compelling a return was by taking out an *alias*, and then a *pluries* writ, and thereafter issuing an attachment.   A reasonable time has always been allowed for making the return, and it is not to be presumed that one will not be made.   *Stockdale* v. *Hansard*, 8 Dowling, 474; *Mash's Case*, 2 Wm. Bl. 805.   And see *United States* v. *Bollman et al.*, 1 Cr. C. C. 373, where the Circuit Court of the District of Columbia refused to issue an attachment until three days had expired after the service of the writ.   Hurd on Hab. Corp. (2d ed.) 236; Church on Hab. Corp. (2d ed.) § 126.

In this case, if the writ of *habeas corpus* had been issued April 9, the next court day after the petition for the writ was presented to this court, the imprisonment of petitioner would have expired six days after the issue of the writ, and fourteen days before the person having him in custody would be required to make his return, and, before the case could be heard upon the writ and return the prisoner would no longer be in custody.

The grave questions of public and constitutional law sought to be brought into judgment by this application would have become merely moot questions so far as the decision thereof could affect any right or interest of the petitioner.   And this would be so even if we issued the writ and attempted to deal with the prisoner by a preliminary order.   Before he could be communicated with and brought before us he would be freed from restraint.   *In re Callicott*, 8 Blatchford, 89.

As was said in *Stockdale's case*, we cannot presume that a return would not be made, and even if made at once, as it must be made from Porto Rico, it would nevertheless be too late for any action of ours to be effectual.

True the issue of the writ might be waived by the Government or we could enter a rule and proceed in the absence of the prisoner and at once, by agreement, *Medley, Petitioner*, 134 U. S. 160; *In re Burrus*, 136 U. S. 586; but the motion for leave to file has been resisted, and there has been no intimation of a disposition to speed the proceedings.   Under these circumstances we cannot shut our eyes to the fact that before definitive action could be had, the application would abate.

It is well settled that this court will not proceed to adjudication where there is no subject-matter on which the judgment of the court can operate. And although this application has not as yet reached that stage, still as it is obvious that before a return to the writ can be made, or any other action can be taken, the restraint of which petitioner complains would have terminated, we are constrained to decline to grant leave to file the petition.

The situation was the same April 9, and these observations are applicable as of that date.

In arriving at this conclusion we are not to be understood as intimating in any degree an opinion on the question of jurisdiction or other questions pressed on our attention.

*Leave denied.*