**UNITED AIR LINES, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent, Continental Air Lines, Inc., et al., Intervenors.**

**No. 73–1017.**

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1975.

Decided July 2, 1975.

H. Templeton Brown, Robert L. Stern, Henry L. Hill, Chicago, Ill., for petitioner.

Thomas D. Finney, Jr., and Lee M. Hydeman, Washington, D. C., for intervenors.

Alan R. Demby, C. A. B., Howard E. Shapiro, Dept. of Justice, R. Tenney Johnson, Philip A. Fleming, Washington, D. C., for respondent.

SPRECHER, Circuit Judge.

The sole issue presented on this appeal is whether air carriers may file new and different tariffs while lawful tariffs duly established by the Civil Aeronautics Board remain in effect or whether under such circumstances the carriers only recourse is to seek to modify the Board-established tariffs.

On July 14, 1970, the Civil Aeronautics Board suspended tariffs proposing fare changes between the mainland and Hawaii filed by United Air Lines and other carriers, and instituted an investigation into the lawfulness of all fares, existing and proposed, in that area. CAB Order No. 70–7–69.

On May 26, 1972, the Board established certain fare levels and differentials, required the carriers involved to conform their tariffs thereto, and retained jurisdiction to modify the rates, fares and charges therein established. CAB Order No. 72–5–100.

Shortly thereafter, several of the carriers petitioned for amendments seeking higher fares. United filed its conforming tariff on June 23, 1972. Five days later on June 28, United filed new tariffs providing for fares higher than those prescribed by Order 72–5–100.

On November 10, 1972, the Board denied United's petition for review of the action of the Board's Tariff Section in rejecting United's proffered new tariffs. CAB Order No. 72–11–31. The Board said:

> When the Board, after hearing, finds an interstate fare to be unlawful, it is required by Section 1002(d) to determine and prescribe the lawful fare . . . thereafter to be charged. Board orders issued pursuant to Section 1002(d) continue in force until amended, modified, or revoked by the Board. Obviously, tariffs setting forth fares other than those found to be lawful fares thereafter to be charged must be rejected.

*Id.* at 7.

United then brought this proceeding to review the November 10, 1972 Board Order (No. 72–11–31).

On February 23, 1973, upon the motion of United, the Board reopened Phase 9 of its Domestic Passenger-Fare Investigation, a gigantic ratemaking proceeding involving passenger fares in the 48 contiguous states. CAB Order No. 73–2–93. The Board indicated in that order that it was considering five alternative methods for dealing with rate changes subsequent to the conclusion of a ratemaking proceeding.

On April 27, 1973, the Board revoked Order 72–5–100 to the extent that it prescribed fare levels in the mainland-Hawaii market, and instituted a new ratemaking proceeding to consider new fare levels for that market. CAB Order No. 73–4–117.

At this time, the Board moved this court to dismiss the petition for review of Order 72–11–31 on the ground of mootness. On June 13, 1973, Judge Stevens in his capacity as motion judge denied the Board's motion, stating in his order:

> A federal court's duty to dismiss a case as moot derives from the requirement of Article III of the Constitution under which exercise of judicial power depends upon the existence of a case or controversy. See *Liner v. Jafco,*

*Inc.,* 374 [375] U.S. 301, 306 n. 6 [20 S.Ct. 673, 44 L.Ed. 813]. If a case is moot, "the defendant is entitled to a dismissal as a matter of right," *United States v. W. T. Grant Co.,* 345 U.S. 629, 645 [73 S.Ct. 894, 97 L.Ed. 1303] and the court lacks power to proceed further with the litigation. While the Board's revocation of Order 72–5–100 makes it possible for United to file its tariff, it does not dissolve the underlying controversy over the legality of the Board's procedure. The CAB has contended all along that only revocation of Board-made rates can clear the way for the filing of inconsistent tariffs. "There is thus 'an actual controversy, and adverse interests,' *Lord v. Veazie,* 8 How. 251, 255 [49 U.S. 251, 12 L.Ed. 1067], with a 'subject-matter on which the judgment of the court can operate,' *Ex parte Baez,* 177 U.S. 378, 390 [20 S.Ct. 673, 44 L.Ed. 813]; *St. Pierre v. United States,* 319 U.S. 41, 42 [63 S.Ct. 910, 87 L.Ed. 1199]." *Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 43 [65 S.Ct. 11, 89 L.Ed. 29]. See also *United States v. W. T. Grant Co.,* 345 U.S. 629, 632 [73 S.Ct. 894, 97 L.Ed. 1303]; *Carpenters Union v. NLRB,* 341 U.S. 707, 715 [71 S.Ct. 966, 95 L.Ed. 1309]. If the CAB could obtain dismissal by this simple expedient, judicial review of the challenged procedure would be defeated, and the controversy would surely be "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515 [31 S.Ct. 279, 55 L.Ed. 310]. Order 72–11–31 remains unrepudiated and constitutes the subject matter of the controversy set forth in United's petition for review. A final, reviewable order is now before this court. The Board's revocation of its rates does not render the case moot.

Judge Stevens entered his order without prejudice to renewal of the motion before this panel, which was done.

Subsequently, the Phase 9 (fare structure) proceeding was decided on March 18, 1974 by the Board. CAB Order No. 74–3–82. The Board said:

As indicated earlier, many parties question the Board's power to prescribe rates for the future. They argue that §§ 403 and 1002(d) of the Act envision that rates are to be initiated by carriers through the filing of tariffs, that tariffs may be rejected only for failure to comply with statutory requirements or matters of form, and that the Board may prescribe a rate only after investigating a tariff and finding the rate unlawful.

\* \* \* \* \* \*

[W]e consider it established that the prescription of rates by the Board under section 1002(d) is a legislative determination of rates thereafter to be charged by the carriers, and the rate order embodying this determination demands carrier compliance so long as it remains effective. Moreover, where, in the face of such a [sic] order, a carrier files new tariffs inconsistent with the rate order, we are of the conviction that the Board's power to reject such tariffs is implicit in the statutory plan, required as a matter of common sense, and is supported by a formidable body of case law.

\* \* \* \* \* \*

The carriers' efforts to find cases in support of their position have not been productive. They cite no case to show that they have the right to change a Board-prescribed rate by filing a tariff inconsistent with that rate, which is not surprising in light of *Arizona Grocery,* [v. Atchison, T. & S. F. Ry. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348], *Corrick* [United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263] and [In re] *Permian Basin* [Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312].

\* \* \* \* \* \*

We conclude that the Board has the power to issue an order fixing rates for the future and to reject tariffs which are inconsistent with such Board-prescribed fares.

*Id.* at 162–63, 166, 172.

On December 27, 1974, the Board issued its opinion and order on reconsideration of Phase 9 (CAB Order No. 74–12–109), wherein it adhered to its position in regard to the issue involved in this appeal. The Board concluded that if carrier fare filings could continue despite the establishment of a Board fare, "the Board would be unable to prevent a continual merry-go-round of investigations all dealing with the same subject." *Id.* at 34.

■ In regard to the mootness question, we adhere to the position taken by Judge Stevens. Subsequent occurrences have not dissuaded us from the view that this case presents an issue "capable of repetition" and capable of "evading review."

■ Upon the merits we are persuaded that the Supreme Court treatment of cases arising under the Interstate Commerce Act, the Packers and Stockyards Act and the National Gas Act confirm the position adhered to by the Civil Aeronautics Board.

The Federal Aviation Act of 1958 provides that air carriers "shall file" tariffs with the Civil Aeronautics Board, Sec. 403(a), 49 U.S.C. § 1373(a),[1] and that any changes by the carriers in the fares must be filed on not less than thirty days' notice. Sec. 403(c), 49 U.S.C. § 1373(c).[2] The Act further provides that the carriers' fares must be just and reasonable and not result in any unjust discrimination or any undue or unreasonable prejudice or disadvantage. Sec. 404, 49 U.S.C. § 1374.[3]

With respect to proposed new or changed fares filed by the carriers, the Board has the power to enter upon a hearing into the lawfulness of such fares and to "suspend" their operation for up to six months while it is investigating the proposed fares. Sec. 1002(g), 49 U.S.C. § 1482(g).[4]

Finally, the Act authorizes the Board to prescribe lawful fares whenever it is of the opinion that existing fares are unjust, unreasonable, unjustly discriminatory, or unduly prejudicial. In such case the Board *"shall determine and prescribe the lawful rate, fare, or charge . . . thereafter to be demanded, charged, collected, or received . . ."* Sec. 1002(d), 49 U.S.C. § 1482(d) (emphasis added).

The Interstate Commerce Act contains a similar rate-making provision authorizing the Commission "to determine and prescribe what will be the just and reasonable . . . rate, fare, or charge . . . to be thereafter observed in such case . . ." 49 U.S.C. § 15(1).

The Packers and Stockyards Act contains a similar provision authorizing the Secretary of Agriculture to "determine and prescribe what will be the just and reasonable rate or charge . . . to be thereafter in such case observed . . ." 7 U.S.C. § 211(a).

The Natural Gas Act contains a similar provision authorizing the Federal Power Commission to "determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order . . ." 15 U.S.C. § 717d(a).

The Supreme Court interpreted the Interstate Commerce Act in *Arizona Grocery Co. v. Atchison, Topeka & Santa Fe*

---

1. The Interstate Commerce Act of 1887 as amended (I.C.A.) contains a similar provision (49 U.S.C. § 6(1)); the Packers and Stockyards Act of 1921 (P.S.A.) contains a similar provision (7 U.S.C. § 207(a)); and the Natural Gas Act of 1938 (N.G.A.) contains a similar provision (15 U.S.C. § 717c).

2. I.C.A. contains a similar provision (49 U.S.C. § 6(3)); P.S.A. contains a similar provision on not less than ten days' notice (7 U.S.C. § 207(c)); and N.G.A. contains a similar provision (15 U.S.C. § 717c(d)).

3. I.C.A. contains similar provisions (49 U.S.C. §§ 2, 3, 15(1)); P.S.A. contains a similar provision (7 U.S.C. § 208); and N.G.A. contains similar provisions (15 U.S.C. § 717c(a) and (b)).

4. I.C.A. contains a similar provision with up to seven months' suspension (49 U.S.C. § 15(7)); P.S.A. contains a similar provision with up to two months' suspension (7 U.S.C. § 207(e)); and N.G.A. contains a similar provision with up to five months' suspension (15 U.S.C. § 717c(e)).

*Railway Co.,* 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932), and concluded:

> When under this mandate the Commission declares a specific rate to be the reasonable and lawful rate for the future, it speaks as the Legislature, and its pronouncement has the force of a statute.

> \* \* \* \* \* \*

> Specific rates prescribed for the future take the place of the legal tariff rates theretofore in force by the voluntary action of the carriers, and themselves become the legal rates. . . . The carrier cannot change a rate so prescribed . . . . It is bound to conform to the order of the Commission. If that body sets too low a rate, the carrier has no redress save a new hearing and the fixing of a more adequate rate for the future.

*Id.* at 386, 387, 52 S.Ct. at 185 (footnote omitted).

In *United States v. Corrick* 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263 (1936), the Court quoted the "to be thereafter observed" language of the Packers and Stockyards Act and said:

> [W]hen the secretary . . . orders specified rates thereafter to be charged, these become the only lawful rates and so remain until the further order of the secretary.

> The bill shows that the secretary, after inquiry and full hearing, fixed rates thereafter to be charged by [operators of market agencies at the Chicago stockyards] . . . and these had not been set aside or enjoined in any appropriate judicial proceeding or been altered by subsequent order of the secretary. The court was, therefore, without power to enjoin the prosecution of the [operators] . . . for charging rates other than those charged by the secretary.

*Id.* at 439–40, 56 S.Ct. at 831 (footnote omitted).

In *Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968), the Federal Power Commission adopted a system of area maximum rates and imposed a moratorium on 15 U.S.C. § 717c(d) rate changes by gas producers. In upholding the moratorium, the Supreme Court said:

> The validity of the moratorium order turns principally upon construction of §§ 4 and 5 of the Act. Section 4(d) provides that no modification in existing rate schedules may be made by a natural gas company except after 30 days' notice to the Commission. When the Commission receives such notice, it is permitted by § 4(e), upon complaint or on its own motion, to suspend the proposed rate schedule for a period not to exceed five months. The Commission is to employ the period of suspension to conduct hearings upon the lawfulness of the proposed rates. If at the end of the suspension period appropriate orders have not been issued, the proposed rate schedule becomes effective, subject only to a refund obligation. In contrast, § 5(a) permits the Commission, upon complaint from a public agency or a gas distributing company, or on its own motion, to conduct proceedings to determine whether existing rates are just and reasonable, and to prescribe rates "to be thereafter observed and in force . . . ." These investigatory powers are not conditional upon the filing by a natural gas company of any proposed change in existing rates.

> Certain of the producers urge that §§ 4 and 5 must in combination be understood to preclude moratoria upon filings under § 4(d). They assert that the period of effectiveness of a rate determination under § 5(a) is limited by § 4(e); they reason that § 4(d) creates an unrestricted right to file rate changes, and that such changes may, under § 4(e), be suspended for a period no longer than five months. If this construction were accepted, it would follow that area proceedings would terminate in rate limitations that could be disregarded by producers five months after their promulgation. The result, as the Commission observed,

261

would be that "the conclusion of one area proceeding would only signal the beginning of the next, and just and reasonable rates for consumers would always be one area proceeding away." 34 F.P.C., at 228.

We cannot construe the Commission's statutory authority so restrictively. Nothing in § 5(a) imposes limitations of time upon the effectiveness of rate determinations issued under it; rather, the section provides that rates held to be just and reasonable are "to be thereafter observed . . . ." Moreover, this Court has already declined to find in § 4(d) or § 4(e) an "invincible right to raise prices subject only to a six-month delay and refund liability." *United Gas Imp. Co. v. Callery Properties,* 382 U.S. 223, 232 [86 S.Ct. 360, 366, 15 L.Ed.2d 284] (opinion concurring in part and dissenting in part). Section 4(d) merely requires notice to the Commission as a condition of any modification of existing rates; it provides that a "change *cannot* be made without the proper notice to the Commission; it does not say under what circumstances a change *can* be made." *United Gas Pipe Line Co. v. Mobile Gas Service Corp.,* 350 U.S. 332, 339 [76 S.Ct. 373, 378, 100 L.Ed. 373]. (Emphasis in original.) Nor does § 4(e) restrict the Commission's authority under § 5(a); it permits the Commission to preserve an existing situation pending consideration of a proposed change in rates, and thereafter to issue an order retroactively forbidding the change; but the "scope and purpose of the Commission's review [under § 5(a)] remain the same . . . ." *Id.,* at 341, 76 S.Ct. 373 at 379.

*Id.* at 777–80, 88 S.Ct. at 1365 (footnotes omitted).

Following the *Permian* case, the Federal Power Commission embarked on a program of area ratemaking through informal rulemaking procedures, which were approved in *Phillips Petroleum Co. v. FPC,* 475 F.2d 842 (10th Cir. 1973),

*cert. denied,* 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974).

Consequently, on the narrow issue with which we are confronted, the order of the Board of November 10, 1972 (No. 72–11–31) is affirmed. We believe that Congress no more intended in the Federal Aviation Act than in the other three similar acts to authorize the Board to establish a lawful rate only to be followed immediately by the necessity of passing upon other and different rates filed by the carriers.

Order affirmed.