

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2002

# AP Boyd Inc v. Newark Pub Sch

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4250

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"AP Boyd Inc v. Newark Pub Sch" (2002). *2002 Decisions*. Paper 484.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/484

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-4250


A.P. BOYD, INC. AND THE MECHANICAL CONTRACTORS
ASSOCIATION OF NEW JERSEY, INC.

v.

NEWARK PUBLIC SCHOOLS

(District Court No. 00-cv-00100)


NORTHERN NEW JERSEY CHAPTER, INC. NATIONAL
ELECTRICAL CONTRACTORS ASSOCIATION

v.

THE NEWARK PUBLIC SCHOOLS

(District Court No. 00-cv-00101)


AP-Boyd, Inc.; The Mechanical Contractors
Association of New Jersey, Inc.,
                              Appellants


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 00-cv-00100 & 00-cv-00101)
District Judge:  Honorable Joseph A. Greenaway


Submitted under Third Circuit LAR 34.1(a)
July 19, 2002

Before:  McKEE, FUENTES and ALDISERT, Circuit Judges.

(Filed August 7, 2002)


OPINION OF THE COURT


ALDISERT, Circuit Judge.
     We decide today that Appellants A.P. Boyd, Inc. and the Mechanical Contractors
Association of New Jersey, Inc. are not entitled to attorneys' fees for seeking declaratory
and injunctive relief against the Newark Public School District.  We will affirm the
judgment of the district court.

Appellants filed suit against the Newark Public School District for maintaining a "set-aside" program for electrical and plumbing contracts for the Malcolm X. Shabazz High School (the "Shabazz Project"), as well as for Appellee's policy of race-based contracting.  Appellants argued that the Court's decision in City of Richmond v. J.A. Croson Co., 488 U.S. 469 (1989), rendered Appellee's actions unconstitutional because the set-aside program, purportedly instituted according to Article 15 of the Public School Contracts Law ("PSCL"), N.J. Stat. Ann.   18A:18A-51 through 59, impermissibly discriminated according to race, in violation of Article 1   5 of the New Jersey Constitution, 42 U.S.C.    1983, 1988(b) and (c) and section 1 of the Fourteenth Amendment to the United States Constitution.  The set-aside program refers to the practice of excluding non-minority contractors from bidding on particular projects, in which they otherwise would be eligible, in order to assist minority contractors in getting work.  Appellants sought both declaratory and injunctive relief, attempting to have the contract awards enjoined or nullified, and the set-aside program declared unconstitutional.

The district court consolidated Appellants' case at trial with a similar action brought by the National Electrical Contractors Association ("NECA").  The School District and NECA entered into a Consent Order which provided that the District would conduct a study to determine whether a set-aside program was warranted.  The Order further provided that the District would not reinstate a set-aside program until such time as the study had been completed and found to warrant such a program.  Appellants refused to join in the Consent Order.

Meanwhile, the electrical and plumbing work on the Shabbazz Project had been awarded and, for all intents and purposes, had been substantially completed.  Because Appellants sought only to vacate the contracts and enjoin the work, the court determined that their action was now moot.  Appellants then sought attorneys' fees under the "catalyst theory" as articulated by this court in Baumgartner v. Harrisburg Hous. Auth., 21 F.3d 541 (3d Cir. 1994).  Appellants relied ostensibly on the theory that, although they did not receive a judgment in their favor, the Consent Order was germinated by Appellants' lawsuit, and that their lawsuit was the catalyst that brought about the reforms.  This contention is argued vigorously even though Appellants refused to join in the Consent Order.  That aside, the Court has rejected the catalyst theory in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res., 532 U.S. 598 (2001).  Appellants then sought to amend their complaint to request nominal damages.  Their goal was to thereby qualify as a prevailing party under the prevailing party theory, and thus be entitled to fees.  The district court denied the request and this appeal followed.

Appellants present three issues.  They argue that the district court was inconsistent in its application of the teachings of Buckhannon with respect to nominal damages, while determining that their equitable arguments were moot; that they were prevailing parties by virtue of the Consent Order and alternatively, that the district court erred in applying the teachings of Buckhannon.  Because we are writing for parties who are familiar with the facts and procedural history in the district court, we will discuss only the legal issues presented before us and the material facts relating thereto.

I.

Reducing Appellants' first argument to a logical syllogism, their major premise is that when a case is moot, the court is prohibited from considering any other motion; this case is moot; therefore the court may not consider the nominal damages issue.  So stated, it becomes obvious that this contention takes the form of the classic material fallacy of non sequitur.  It was Appellants who argued that because their equitable contentions were determined as moot, the court should have considered an implied demand for compensatory damages in the form of nominal damages.  Their request having been denied, they now argue before us that the court's action was inconsistent.

A.

Appellants are not entitled to nominal damages because, to revert to a common law analysis that still persists on the question of whether one is entitled to a jury trial, their complaint sounds in equity and not law.  It sought injunctive and declaratory relief, not compensatory damages, nominal or otherwise.  We apply the teachings of  Fox v. Bd. of Trustees of the State Univ. of N.Y., 42 F.3d 135 (2d Cir. 1994), where students brought an action against SUNY seeking declaratory and injunctive relief on First Amendment grounds.  Because the plaintiffs were no longer students during the litigation, they argued, as do Appellants here, that they implicitly pled nominal damages when requesting "such

other relief as the court deemed just and proper."  The court responded by stating:  "there is absolutely no specific mention in [the Complaint] of nominal damages.  Nor can a request for such damages be inferred from the language of [the Complaint]."  Fox, 42 F.3d at 141; see also Arizonans for Official English v. Arizona, 520 U.S. 43, 71 (1997) ("a claim for nominal damages, extracted late in the day from [plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness, [bears] close inspection").

It would have been preferable if Appellants' Brief contained a Summary of Argument, as required by Rule 28(a)(8), Federal Rules of Appellate Procedure, to make more clear how this argument relates to their attack on mootness on the theory that a claim for nominal damages could be inferred from the averment "such other relief as the court may award."  Their contention here flies in the face of their argument in support of a preliminary injunction where their counsel argued:  "If the project is awarded to somebody else, my client loses that project, he has no right of action to collect any monetary damages."  Appellants' App. at 90.  At the very least, the nominal damages argument is foreclosed by dictates of Judicial Estoppel.  See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him . . . This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (internal citations omitted).

B.

Subsumed in this "inconsistency" argument is Appellants' contention that the matter was not moot.  We now turn to this contention.  A case is moot when it has lost its character as a present, live controversy of the kind that must exist to avoid advisory opinions on abstract opinions of law.  Diffenderfer v. Cent. Baptist Church of Miami, Florida, Inc., 404 U.S. 412, 414 (1972) (per curiam).

The mootness doctrine is centrally concerned with the court's ability to grant effective relief.  'If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.'

County of Morris v. Nationalist Movement, 273 F.3d 527, 533 (3d Cir. 2001) (quoting Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-699 (3d Cir. 1996).  Appellants' lawsuit is moot because they sought only injunctive or declaratory relief by voiding the contracts.  The work is substantially finished, a new study of minority participation is being conducted, and no MBE set-aside contracts will be awarded in the meantime.

In N.J. Tpk. Auth. v. Jersey Cent. Power and Light, 772 F.2d 25 (3d Cir. 1985), we held that the plaintiff's action to enjoin the shipping of hazardous materials on the New Jersey Turnpike was moot because there was no reasonable expectation that the wrong would be repeated.

Similarly, in Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo, 981 F.2d 50 (2d Cir. 1992), plaintiff contractors brought a  1983 claim against the State of New York alleging constitutional violations stemming from the state's minority set-aside program.  The court held that because New York State had instituted emergency regulations for suspending enforcement of the set-aside program pending a post Croson study, plaintiff's claims were moot.  It reasoned that although "ordinarily the voluntary cessation of allegedly illegal conduct does not deprive a federal court of jurisdiction, such action does bear on whether the court should, in the exercise of its discretion, dismiss the case as moot."  Id. a 59.  It noted that "[s]ome deference must be accorded to a state's representations that certain conduct has been discontinued."  Id.

Finally, in Maryland Highways Contractors Assn., Inc. v. State of Md., 933 F.2d 1246 (4th Cir. 1991), a case with facts almost identical to those present here, the contractors had alleged that the state's minority set-aside program violated their equal protection rights.  Because Maryland commissioned a post Croson study during the pendency of the appeal, the court held that plaintiff's claims became moot.  We are persuaded by the reasoning of these cases.

Moreover, we believe that declaratory relief is also moot when the challenged acts

have already "irretrievably occurred."  Accordingly, we apply the teachings of N.J. Tpk. Auth., that the claim for injunctive relief had become "academic by reason of these changed circumstances . . . ."  Id. at 27.  Here, as in N.J. Tpk. Auth., the challenged action awardin the contracts has already occurred, and the work required by them has already been performed.  There is no longer a "'subject matter upon which the judgment of the court can operate' to make a substantive determination on the merits."  Id. at 30 (quoting Ex Parte Baez, 177 U.S. 378, 390 (1900)); see also Jersey Cent. Power and Light Co. v. State of N.J., 772 F.2d 35, 36 (3d Cir. 1985) (holding that injunctive claim was rendered "meaningless since the State action sought to be enjoined has irretrievably occurred").

## II.

For Appellants to be prevailing parties and thus entitled to attorneys' fees under 42 U.S.C.  1988(b), they must have either obtained a judgment on the merits or be a party to a settlement agreement that is expressly enforced by the court through a consent decree. Neither has occurred here.  First, as previously discussed, they have not prevailed on the merits because their claims were dismissed as moot.  They were not a party to a court enforced consent decree because they deliberately refused to be a party to the Consent Order.  There has been no "judicially sanctioned change in the legal relationship" between Appellants and the District.  Buckhannon, 532 U.S. at 605.  Appellants' application for attorneys' fees therefore rests entirely on the catalyst theory.

## III.

We reject the alternative argument that the catalyst theory is alive and well in t judicial circuit.  Indeed, it is moribund.  Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 164 n.3 (3d Cir. 2002) ("In Buckhannon, the Supreme Court rejected the "catalyst theory," holding that where a party has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct, the plaintiff is not a "prevailing party.").

* * * * *

We have considered all contentions presented by the parties and conclude that no further discussion is necessary.

The judgment of the district court will be affirmed.

TO THE CLERK:

Please file the foregoing opinion.


/s/ Ruggero J. Aldisert
Circuit Judge

DATED:  August 7, 200