## JOHN MOCK *v.* WARDEN, STATE PRISON

Superior Court, Judicial District of Tolland
File No. CV-00 0003127

Memorandum filed February 18, 2003

*Kenneth P. Fox,* for the petitioner.

*James B. Bernardi,* supervisory assistant state's attorney, and *Mitchell D. Rubin,* senior assistant state's attorney, for the respondent.

FUGER, J. On January 6, 2003, the warden of the state prison, the respondent, filed a motion to dismiss[1] the present petition for habeas corpus on the ground that John Mock, the petitioner, is no longer confined pursuant to the challenged convictions. Consequently, the respondent is asserting that this court lacks subject matter jurisdiction over the petition.[2] On January 22, 2003, the petitioner filed a timely objection to the motion to dismiss.

When adjudicating a motion to dismiss, "a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Lawrence Brunoli, Inc.* v. *Branford,* 247 Conn. 407, 410–11, 722 A.2d 271 (1999). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Barde* v. *Board of Trustees,* 207 Conn. 59, 62, 539 A.2d 1000 (1988).

In the present case, the petitioner has alleged that he was convicted under docket numbers CR-2592, CR-2608, CR-2828 and CR 88-2871 in the judicial district of Stamford-Norwalk of various criminal offenses. On November 29, 1988, the court, *Nigro, J.,* sentenced the

---

[1] The respondent's motion does not comply with the requirements contained within Practice Book § 10-31 (a) in that the respondent has failed to file a supporting memorandum of law. Nevertheless, the court will consider the motion to dismiss.

[2] Practice Book § 23-29 provides in pertinent part that the "judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that:

"(1) the court lacks jurisdiction . . . ."

petitioner to a total effective sentence of twelve years, suspended after the service of seven years, to be followed by five years of probation. There is nothing in the record to permit this court to conclude that the petitioner would be entitled to any credit on this sentence, so, it is assumed that the petitioner was released from confinement on November 28, 1995, and thereafter entered onto his probation period.[3] Given the sentence of five years probation, the petitioner would have been on probation through November 28, 2000. The petition for a writ of habeas corpus was filed in this court on December 1, 1999. At the time that the petition was filed in the court, the petitioner had been released from physical custody; however, he was on probation. It is apparent from the record that even though the petitioner was reincarcerated due to independent matters prior to the expiration of the probationary period, the state did not seek, nor was there ever found to be, a violation of the probation. It is reasonably clear that after his release from physical custody, the petitioner was never reincarcerated as a result of the November 1988 convictions.

The respondent argues that since, at the time the petition was filed, the petitioner was no longer in the physical custody of the respondent, this court lacks subject matter jurisdiction and the petition should now be dismissed. The petitioner argues that although he was not in physical custody, he was not enjoying full liberty and was still in the respondent's constructive custody.

[3] The record before this court is not completely clear. Neither the respondent nor the petitioner has submitted any affidavits of additional facts not in the record as to how the petitioner's confinement was calculated. Although both parties have submitted various documents without any sort of attestation of accuracy, there is, contained within the petition, an allegation that the petitioner was arrested on November 23, 1988, with sentencing on November 29, 1988. There is nothing, however, to indicate whether the petitioner was held in custody during this six day period or whether he was admitted to bail.

The writ of habeas corpus is an ancient and time-honored component of our Anglo-American jurisprudence. "We do well to bear in mind the extraordinary prestige of the Great Writ, habeas corpus ad subjiciendum, in Anglo-American jurisprudence: 'the most celebrated writ in the English law.' 3 Blackstone Commentaries 129. It is 'a writ antecedent to statute, and throwing its root deep into the genius of our common law. . . . It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement. It is of immemorial antiquity, an instance of its use occurring in the thirty-third year of Edward I.' "[4] *Fay* v. *Noia,* 372 U.S. 391, 399–400, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963). When the United States achieved independence from England, the writ was embodied in our law as well. "Received into our own law in the colonial period, given explicit recognition in the Federal Constitution, Art. I, § 9, cl. 2, incorporated in the first grant of federal court jurisdiction, Act of September 24, 1789, c. 20, § 14, 1 Stat. 81–82, habeas corpus was early confirmed by Chief Justice John Marshall to be a 'great constitutional privilege.' *Ex parte Bollman and Swartwout,* [8 U.S. (4 Cranch) 75, 95 (1807)]." *Fay* v. *Noia,* supra, 400.

Given the venerable history and importance of this writ, if a petitioner does state a proper cause of action, it is a draconic measure to take the step of denying access to the courts by granting the respondent's motion to dismiss. "[I]t is not simply a question of state procedure when a state court of last resort closes the door to any consideration of a claim of denial of a federal right. And that is the effect of the denials of habeas corpus in a number of cases now before this Court, for in none of the cases does the Attorney General suggest that either of the other two Illinois post-trial

---

[4] Edward I reigned in England in the late thirteenth century A.D.

remedies, writ of error and coram nobis, is appropriate. Unless habeas corpus is available, therefore, we are led to believe that Illinois offers no post-trial remedy in cases of this kind." *Young* v. *Ragen*, 337 U.S. 235, 238, 69 S. Ct. 1073, 93 L. Ed. 1333 (1949). Certainly at this point in the history of the convictions challenged by the petitioner, the only remedy, if indeed there is a remedy, is through the writ of habeas corpus.

While the following is a lengthy excerpt from the case, it clearly shows the current thinking of our Supreme Court. " 'We [next take] note of the basic purpose underlying what is one of the most extraordinary and unique legal remedies in the procedural armory of our law. . . . Although it is true that the United States Supreme Court has not always followed an unwavering line in its conclusions as to the availability of [t]he [writ of habeas corpus] . . . from the time the writ originated in seventeenth century England, its central purpose has been to test the legality of detention. English legislation and common law have been recognized by the United States Supreme Court as authoritative guides in applying the writ in the federal courts. *McNally* v. *Hill*, 293 U.S. 131, 136–37, 55 S. Ct. 24, 79 L. Ed. 238 (1934), overruled on other grounds, *Peyton* v. *Rowe*, 391 U.S. 54, 88 S. Ct. 1549, 20 L. Ed. 2d 426 (1968).

" 'In applying federal habeas statutes, the United States Supreme Court has said that [t]he purpose of the proceeding defined by the statute was to inquire into the legality of the detention . . . . There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries on the English common law. *McNally* v. *Hill*, [supra, 293 U.S. 136–37]; see also *Engle* v. *Isaac*, 456 U.S. 107, 136, [102 S. Ct. 1558, 71 L. Ed. 2d 783] (1982) (Stevens, J., concurring in part and dissenting

in part) (relief available to a prisoner only if he is held in custody in violation of the constitution or laws or treaties of the United States); *Preiser* v. *Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) ([i]t is clear, not only from the language of [the federal habeas statutes], but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody); *Fay* v. *Noia*, [supra, 372 U.S. 402] (writ's root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release); [H. Hart & H. Wechsler, The Federal Courts and the Federal System (3d Ed. 1988) p. 1468] (Great Writ always serves the function of precipitating a judicial inquiry into a claim of illegality in the petitioner's detention for the purpose of commanding his release, or other appropriate disposition.); P. Bator, "Finality in Criminal Law and Federal Habeas Corpus for State Prisoners," 76 Harv. L. Rev. 441, 444–45 (1963) ([i]ts function, in the great phrase, is to test the legality of the detention of one in the custody of another) . . . .

" 'The history of our own jurisprudence is wholly in accord with these principles. Habeas corpus provides a special and extraordinary legal remedy for illegal detention. . . . The deprivation of legal rights is essential before the writ may be issued. . . . Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. . . . When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. . . . Further, any remedy must be commensurate with the scope of the constitutional violations that have been established.' " *Johnson* v.

*Commissioner of Correction*, 258 Conn. 804, 813–15, 786 A.2d 1091 (2002).

There is a judicial bias in favor of jurisdiction in petitions for writs of habeas corpus. "Given the rule that incarcerated persons must have an access to a post-conviction proceeding that permits them to make a claim of nonjudgmental illegality of confinement, there is a persuasive practical consideration for holding that the writ is available in cases such as that brought by the subject petition. The only practical procedure now provided in this state for access to the courts for the assertion of constitutional claims by inmates is that of a petition for a writ of habeas corpus. Habeas corpus is the only procedure that does not impose the handicap of court costs and counsel fees. It is the only procedure that can be initiated by merely marking a box in a form provided by the department of correction. To adopt the defendant's view, that habeas corpus is a remedy only when the inmate is challenging the legality of the judgment of conviction, would effectively deny a hearing on claims of inmates that, since their convictions, they have been illegally detained because of acts not related to the original judgment. The court should not adopt a rule that will have that practical consequence." *Dukuly* v. *Warden*, 34 Conn. Sup. 88, 93–94, 377 A.2d 1344 (1977).

Notwithstanding this history and respect for the writ, the ability of a petitioner to file a petition seeking the court to issue a writ of habeas corpus is not without limit. In Connecticut, General Statutes § 52-466 (a) (1) provides that "[a]n application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial district in which the person *whose custody is in question is claimed to be illegally confined or deprived of his liberty . . . .*" (Emphasis added.) It is important to note that the legislature has not enacted any other limitations upon the right to file

a habeas petition. It is clear that there is no legislatively established statute of limitations requiring a habeas petition to be filed within a certain period of the imposition of the sentence. While the legislature could have done so, it has not. Consequently, the court will find that, unlike civil actions or most criminal matters, there is no fixed statute of limitations for the filing of a petition for a writ of habeas corpus.

Notwithstanding this lack of a fixed statute of limitations, there is a key prerequisite to the filing of a habeas corpus petition that is the functional equivalent of a statute of limitations. In order for the court to grant a writ of habeas corpus, the petitioner must be "illegally confined or deprived of his liberty," *at the time that the petition is filed.*[5] Further, the court has continuing jurisdiction over a properly filed petition even if the petitioner has subsequently been released from custody. "It is clear that a petition for a writ of habeas corpus, if filed while the petitioner is in custody, is not rendered moot by the expiration of the petitioner's sentence. See *Barlow* v. *Lopes*, [201 Conn. 103, 105 n.2, 513 A.2d 132 (1986);] *Herbert* v. *Manson*, [199 Conn. 143–44 n.1, 506 A.2d 98 (1986)]. The expiration of a petitioner's sentence prior to a dispositive decision by the habeas court does not render his claims moot. *Haynes* v. *Bronson*, 13 Conn. App. 708, 710–11, 539 A.2d 592 (1988). In attacking the legality of his conviction in a habeas corpus action, the petitioner's claim survives his release from incarceration. Id.; see also *Barlow* v.

---

[5] "If there has been, or will be, an *unconditional* release from custody before inquiry can be made into the legality of detention, it has been held that there is no habeas corpus jurisdiction. See *Parker* v. *Ellis*, [362 U.S. 574, 582 n.8, 80 S. Ct. 909, 4 L. Ed. 2d 963 (1960)] (Warren, C. J., dissenting); *Ex parte Baez*, 177 U.S. 378 [20 S. Ct. 673, 44 L. Ed. 813] (1900); *United States ex rel. Rivera* v. *Reeves*, 246 F. Supp. 599 (D. C. S. D. N. Y. 1965); *Burnett* v. *Gladden*, 228 F. Supp. 527 (D. C. D. Ore. 1964)." (Emphasis added.) *Carafas* v. *LaVallee*, 391 U.S. 234, 238 n.12, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968).

*Lopes*, supra, 105 n.2; *Herbert* v. *Manson*, supra, 143–44 n.1." *Smith* v. *Commissioner of Correction*, 65 Conn. App. 172, 176, 782 A.2d 201 (2001).

The combination of the statutory language in § 52-466 and the subsequent judicial interpretations have operated to create a variable statute of limitations that will fluctuate in accordance with the sentence imposed by the court. Where a court imposes, for example, a straight six month sentence with no probation, the failure to file a habeas petition within that six month confinement period will mean that the court is without jurisdiction to hear the case and will result in a dismissal of the petition. In that example, there would be a six month "statute of limitations." On the other hand, where the sentence was for life imprisonment, a petition filed years later would still be within the "statute of limitations."

In the present case, the resolution is not quite so simply determined. At the time he filed his petition, the petitioner had been released from the physical custody of the respondent, however, he was still on probation with a potential additional five years of confinement at that same time. The issue in the present case, therefore, turns upon the question of whether a person who is not in *physical custody*, but has been released on parole or probation at the time of the initial filing of the petition, has allowed the "statute of limitations" to lapse, thereby depriving the court of subject matter jurisdiction. Since a person in that status is not confined, the issue is whether a person on probation is in some way "deprived of his liberty," the alternative basis for jurisdiction contained within § 52-466.

In this regard, it is instructive to consider the distinction between parole and probation. "Substantial differences in status between probationers and parolees do exist. A probationer is subject to judicial control and

'the court may modify or enlarge' the conditions of probation. General Statutes §§ 53a-29 to 53a-34. On the other hand, a parolee is subject not to judicial control but to the administrative control of the parole board. General Statutes §§ 54-124a to 54-131. Probation is granted because the sentencing court is of the opinion that confinement is not necessary for the protection of the public and probation provides a better chance of rehabilitation, whereas *parole is technically a custody status.* [General Statutes] § 53a-29." (Emphasis added.) *Liistro* v. *Robinson,* 170 Conn. 116, 128–29, 365 A.2d 109 (1976). A person charged with a probation violation may be admitted to bail; General Statutes § 53a-32; whereas an alleged parole violator is not. General Statutes § 54-127. While a person remains at large on probation, the suspended portion of the sentence remains in full.[6] Each day that a parolee spends on parole, however, is a day less of the sentence that must be fulfilled.[7] The probationer is faced with an inchoate, i.e., tentative, sentence that could spring into being upon a hearing before the court at which a violation of probation is proven. The parolee, on the other hand, faces a definite sentence that diminishes on a daily basis to which he could be returned without judicial intervention. Clearly, a parolee fits within the first alternative in § 52-466 as being a person "confined," albeit constructive versus actual. This court would have subject matter jurisdiction over any habeas petition seeking to attack a conviction that is filed: (a) while the petitioner is in physical custody (actual custody) as a result of that conviction;

---

[6] This is true even if the warrant alleging a probation violation is sought on the day before the expiration of the probationary period. Here, had the petitioner been arrested for a probation violation even as late as November 28, 2000, the entire suspended five year sentence could have been ordered executed.

[7] In contrast, had the petitioner violated his parole on November 27, 2000, he could have been returned to the physical custody of the respondent for a maximum of one day.

or, (b) while the petitioner is on *parole* (constructive custody) as a result of that conviction.

It is equally clear that this court would have subject matter jurisdiction over a habeas petition attacking the underlying conviction filed after a petitioner has been released from physical confinement on parole or probation but has been subsequently returned to physical custody after a finding of a violation of that parole or probation. In that circumstance, such a person would once again be "confined" and, under the first prong of § 52-466, the court would have subject matter jurisdiction.

Under the facts of the present case, the petitioner had been released from the physical custody of the respondent, placed on probation for a period of five years and was never returned to the custody of the respondent for a violation of that probation.[8] It was during this period that the petitioner was out of the respondent's physical custody, but still on probation, that he filed his petition. As a probationer, the petitioner did not enjoy the same full and unfettered liberty interests as those of his fellow citizens who were not on probation. He was not free, in the absence of permission, to move to another state of the United States. He is generally required to keep in contact with his probation officer. He may be required to submit to random urinalyses to determine if he has been using any illegal substances. He does not enjoy the full freedom of association as his fellow citizens. He may find that his ability to hold certain employment, licenses and permits is restricted. Most importantly, during the period of probation, the probationer faces the prospect of execution of the suspended portion of the sentence.

[8] It is, of course, clear from the record that the petitioner is back in the custody of the respondent, but that was on an independent matter that is not the subject of this habeas corpus petition.

Where one does not have full and unfettered liberty, one has been "deprived of his liberty." Consequently, a probationer does fit within the second prong of § 52-466.[9]

Accordingly, the respondent's motion to dismiss is denied.

---

[9] To reach a contrary conclusion would be to deprive totally a person whose sentence consists solely of a period of probation of the right to file a habeas petition attacking that conviction. Surely, that could not have been the intent of the legislature in passing § 52-466.

