837 So.2d 698 (2003)
Kermit A. FOURROUX, Clement Betpouey, III, Melvin L. Hibberts and Lyndon J. Saia
v.
The BOARD OF COMMISSIONERS FOR THE ORLEANS LEVEE DISTRICT.
No. 2002-CA-0374.
Court of Appeal of Louisiana, Fourth Circuit.
January 8, 2003.
Rehearing Denied February 14, 2003.
*699 John W. Hite, III, Lisa A. Valley, Sessions, Fishman & Nathan, L.L.P., New Orleans, LA, for Kernit A. Fourroux, Clement Betpouey, III, Melvin L. Hibbets & Lyndon J. Saia.
Gerard G. Metzger, Gerard G. Metzger APLC, New Orleans, LA, and Frank A. Milanese, Frank A. Milanese, PLC, New Orleans, LA, for the Board of Commissioners of the Orleans Levee District.
Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, and Judge MAX N. TOBIAS, Jr.
*700 CHARLES R. JONES, Judge.
The Appellant, the Board of Commissioners of the Orleans Levee District (hereinafter "OLD"), suspensively appeals the judgment of the district court in favor of the Appellees, Kermit Fourroux, et al, granting the Appellees' declaratory relief requested in their Motion for Summary Judgment which resulted in the dismissal of OLD's Reconventional Demand. We affirm.

Facts
The Orleans Levy District owns, operates and manages the Orleans Marina (hereinafter the "Marina") located in New Orleans. OLD is a political subdivision of the State of Louisiana administered by the Board of Commissioners of the Orleans Levee District (hereinafter the "Board"). Pursuant to La.Rev.Stat. 38:336(A) & (B)(4), OLD is authorized to establish rental rates and other docking and service charges, and to lease its water bottoms and land at the Marina. OLD has been doing so since the 1960's.
Although OLD argues several assignments of error on appeal, we are of the opinion that this case is a result of the interpretation of four different provisions in a lease agreement between OLD and lessees of land and water bottoms located in the Marina. The contractual relationships between the parties began in July of 1972. Around that time, the Board approved a plan to further develop the Marina by constructing a number of "boathouse shells". The primary term of the original lease between the parties was for 20 years, thus through June 30, 1992. In 1973, OLD authorized an extension of the boathouse leases by giving the lessees three options to renew for a period of five years each. The first option was to begin on July 1, 1992 and end on June 30, 1997, the second option on July 1, 1997 ending June 30, 2002, and the third option on July 1, 2002 ending on June 30, 2007. There is no dispute to the fact that all of the Appellees accepted this option.
In 1994, OLD adopted Resolution No. 11-022394, which offered three (3) additional five-year options to extend the leases past 2007, very similar to the 1972 options. The resolution further provided that the cost of the first five-year option would be $1,000; the cost of the second, $1,000; and the cost of the third, $2,000. However, the extensions would be under the terms to be developed by the Marina Committee, an entity of the Board specifically enlisted to manage the leased boathouses and water bottoms in the Marina and to develop other "terms and conditions" under the resolutions. It is undisputed that the Appellees accepted this offer as well.
According to the Appellees, in October of 1995, pursuant to the 1994 Resolution No. 11-022394, each individual Appellee signed an amendment to the original lease (hereinafter the "Lease Amendments") that expressly provided for the amount of rent to be paid. The Appellees are of the opinion that the Lease Amendments expressly confirm that there may be additional terms to be developed at a later date, and that any future changes or additional terms would in no way affect the amount of rents to be charged.
In September 1998, OLD adopted Resolution No. 5-091698, authorizing a formal request from the Attorney General on the method of valuation of the Orleans Marina Boathouse Leases. Specifically, the question raised was whether OLD could extend the lease agreements past 2006/2007, without taking into consideration the value of the improvement reversion clause in Article XI of the Leases (discussed infra).
In March 2000, the Attorney General issued an opinion stating that extension of the leases in the Marina, without consideration of the value of the improvements *701 thereon, would be subject to legal challenge as prohibited donations under the Louisiana Constitution. In September of 2000, claiming that it was adhering to the opinion of the Attorney General, OLD enacted another resolution increasing the rent in the Lease Amendments, basing it's decision to do so on language in the 1994 resolution providing for future "terms and conditions". The Marina Committee, the entity that was supposed to develop any other terms under the 1994 Resolution, is no longer in existence.

Procedural History
The Appellees, Kermit A. Fourroux, Clement Betpouey, III, Melvin L. Hibbets and Lyndon J. Saia, filed a Petition for Declaratory Judgment seeking the recognition of the lease agreements as binding contracts. OLD filed a Reconventional Demand, arguing that the lease agreements were prohibited donations under the Louisiana Constitution. Appellees filed a Motion for Summary Judgment. The district court dismissed OLD's Reconventional Demand, finding that its argument was "moot", and granted the Appellees' Motion for Summary Judgment. The district court concluded in its well written Reasons for Judgment that:
... the Court's inquiry was whether or not the lease amendments actually set forth unambiguously the amount of rental of this rental be later established by action of the OLD ....it is this Court's opinion that the amount of rental can be accurately determined from a reading of the clearly stated monetary consideration expressed.
OLD files this timely appeal.

Discussion

Ambiguity of the Rental Rates set forth in the Lease Amendments
In its first assignment of error, OLD argues that the district court erred in finding that the Lease Amendments unambiguously set forth the amount of rentals during the three five-year lease option extensions granted in the 1994 Resolution. OLD maintains that the district court erred in assuming that it had drafted the Lease Amendments and by construing any ambiguities in the amendments against OLD. OLD further maintains that preparation of the first amendment to the lease was a result of negotiations between the Board and a civil district court judge, who at the time was a lessee of one of the boathouses at the Marina.
OLD relies on La. Civ.Code art.2056, Standard-form contracts, arguing that this article provides that in case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against any party "who furnished its text". LIGA v. Interstate Fire and Casualty Insurance Company, 93-0911 (La.1/14/94) 630 So.2d 759. OLD argues that the Lease Amendments were not "furnished" by OLD to the Appellees.
The Appellees, on the other hand, rely on the finding of the court in Belle Pass Terminal Inc. v. Jolin, Inc., 92-1544 (La. App. 1 Cir. 3/11/94), 634 So.2d 466, which found that while the threshold inquiry of the Court is to determine whether a contract's language is clear and explicit or ambiguous, the law of interpretation does not authorize the creation of ambiguity where none exits.
In the instant case, both parties agree that the Lease Amendments are unambiguous. Whether a contract is ambiguous or not is a question of law. McCrory v. Terminix Service Co., Inc., 609 So.2d 883 (La.App. 4 Cir.1992); Carter v. BRMAP, 591 So.2d 1184 (La.App. 1 Cir. 1991); Borden, Inc. v. Gulf States Utilities *702 Co., 543 So.2d 924 (La.App. 1 Cir.), writ denied, 545 So.2d 1041 (La.1989). When a contract is to be interpreted by the court as a matter of law, a motion for summary judgment is the proper procedural vehicle to present the question to the court. Carter v. BRMAP, supra. Appellate review of the question(s) of law, is simply whether the trial court's interpretive decision is legally correct. O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235 (La.App. 1 Cir.1990). We find that despite the parties' contention that there is no ambiguity to the Resolution, the parties are in dispute over its interpretation.
Paragraph II of the Resolution, which describes the monetary consideration, reads in part as follows:
... The monetary consideration for the lease of the property described in Paragraph I for the period July 1, 1972 through October 16, 1980 shall be the sum of eight hundred forty-six and 20/100 dollars ($846.20) per annum, payable in four(4) equal quarterly payments...
The section of the Resolution in which OLD places emphasis is the latter wording of paragraph III. Stated in its entirety it reads as follows:
Lessee recognizes and understands that Board Resolution No. 11-02394 provides that the granting of three (3) additional five (5) year options to the South Roadway and West Roadway boathouse leases, and for the purpose of this Amendment, the Lessee in particular, is done under terms to be adopted by resolution of the Board of commissioners of the Orleans Levee District. Lessee agrees that this Amendment is subject to and conditioned upon the above-mentioned terms. The parties agree that, upon the development of said terms, as ratified by the full board, a Sixth Amendment shall be entered reflecting these terms.
We are of the opinion paragraph II of the Resolution, read in its entirety, clearly sets forth rental rates through July 2022. We are also of the opinion that there is no ambiguity in paragraph III of the Resolution, and that these provisions were ratified accordingly. Law and the jurisprudence provide that although courts are bound to give legal effect to contracts according to the true intent of the parties to the contract, that intent must be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. Kennedy v. Sanco Louisiana, Inc., 573 So.2d 505 (La.App. 4 Cir.1990), citing, Massachusetts Mutual Life Insurance Company v. Nails, 549 So.2d 826 (La.1989); Baber v. Hoffer, 430 So.2d 220 (La.App. 4 Cir.1983); LSA C.C. art. 2046. Moreover, the rule of strict construction does not authorize perversion of language or the creation of ambiguity where none exists, and does not authorize courts to make a new contract where the language employed expresses the true intent of the parties. Id. citing, J.M. Brown Construction Company v. D & M Mechanical Contractors, Inc., 222 So.2d 93 (La. App. 1 Cir.1969).
This Court will not place ambiguity on the Lease Amendments where none exists and the parties simply dispute the intent of the contract. The rental rates are eight hundred forty-six dollars and twenty cents ($846.20), to be "payable in advance in four (4) equal quarterly payments". Further, the Appellees agreed with the conditions and terms of the contract and that such terms should not "displace, disturb, alter or change ... any other terms", as stated in the Lease Amendment. The district court was not manifestly erroneous in concluding that the Lease agreement between the Appellees and OLD was an unambiguous binding contract.

*703 "Other Terms and Conditions"
In its second assignment of error, OLD maintains that the district court erred in holding that the Lease Amendments established "other terms and conditions" applicable during the three, five-year lease options granted in the 1994 resolution. OLD relies on the original petition filed by the Appellees, arguing that the Appellees acknowledged that OLD had a right to establish terms applicable during the lease option extensions, except for the "rent duration", and that the Appellees are now taking the position that OLD had no right to establish any terms for the option extension, despite the clear language of the Lease Amendments. OLD further argues that even though the Marina Committee did not adopt any new terms, that OLD had a right to make changes to the Lease Amendments.
The Appellees maintain that it was undisputed in the district court that the Marina Committee did not develop any "future terms and conditions", and certainly had nothing to do with the new rental provisions that OLD enacted in 2000. The district court stated in its Reasons for Judgment, and this court agrees, that:
It is the court's opinion that the amount of rental can be accurately determined from reading of the clearly stated monetary consideration expressed.
Further, La. Civ.Code art 2074 states that:
The words of a contract must be given their generally prevailing meaning.
Words of art and technical terms must be given their technical meaning when a contract involves a technical matter.
We find nothing technical in the subject lease agreement. The words in the Lease Amendments must be given their prevailing meaning.

OLD's Reconventional Demand
In its third assignment of error, OLD argues that the district court erred in dismissing its Reconventional Demand on the basis that the issues raised therein were rendered moot. In its Answer to Petition for Declaratory Judgment and Reconventional Demand for Declaratory Judgment, OLD prayed for the following:
... (1) Plaintiffin-Reconvention has the legal right to adopt and establish the terms for the three (3) five year lease option extensions granted pursuant to the 1994 Board Resolution and subject written lease amendments, including, inter alia, the base annual rental rates during the said lease option extensions; and (2) decreeing that any provision(s) in the subject written lease amendments establishing the base annual rental at water bottom rental rates, subject only to a Consumer Price Index adjustment every five years, during the three (3) five year lease option extensions are null and void as unauthorized ultra vires actions; and (3) decreeing that any provision(s) in the subject written lease amendments establishing the base annual rate at water bottom rental rates, subject only to a Consumer Price Index adjustment every five years, during the three (3) five year lease option extensions are prohibited donations of public property, and, accordingly, null and void as unconstitutional under Article VII, Section 14(A) of the Louisiana Constitution of 1974 ...
OLD argues that the issues raised were introduced in the alternative if the district court found (as it did) that the Lease Amendments established water bottom rental rates during the lease extension options. More specifically, on appeal OLD maintains that the district court erred in rendering moot the constitutional prohibition against donations of public *704 property and the ultra vires lack of authority issue.
OLD maintains that these issues remained viable and that a ruling on these issues would have a legal effect upon the existing controversy despite the interpretation of the Lease Amendments by the district court. According to Louisiana jurisprudence, an issue is "moot" when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601, 720 So.2d 1186 (La. Oct.20, 1998) citing, Perschall v. State, 96-0322 (La.7/1/97), 697 So.2d 240; Louisiana Associated Gen. Contractors, Inc. v. State, 95-2105 (La.3/8/96), 669 So.2d 1185, 1193; American Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158, 162 (La.1993). A case is "moot" when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. Robin v. Concerned Citizens for Better Education in St. Bernard, Inc., 384 So.2d 405 (La.1980). If the case is moot, then "there is no subject matter on which the judgment of the court can operate." St. Charles Parish Sch. Bd. v. GAF Corp., 512 So.2d 1165, 1171 (La.1987), citing, Ex parte Baez, 177 U.S. 378, 20 S.Ct. 673, 44 L.Ed. 813 (1900).
The issues before the district court became moot once the Appellees were granted declaratory relief on their Motion for Summary Judgment. Further, OLD presented these issues to both this Court and the district court as "alternatives", if the Court were to render in favor of the Appellees on the contractual issues which it did. We agree with the district court that the judgment rendered in favor of the Appellees renders the constitutional prohibition against donations of public property and the ultra vires lack of authority issues moot. We further find that deciding these issues, whether on appeal or at the district court level, serves no useful purpose and does not afford OLD any practical relief.
As stated above, we are also of the opinion that the instant case is a result of a contractual relationship between the parties and that the district court was not manifestly erroneous in enforcing that clear language of the contract, and dismissing the Reconventional Demand filed by OLD.

Decree
For the reasons stated herein, we affirm the judgment of the district court granting the Appellees' declaratory relief through their Motion for Summary Judgment, and dismissing the Reconventional Demand of the Board of Commissioners of the Orleans Levee District on the doctrine of mootness.
AFFIRMED.
TOBIAS, J., dissented in part and filed written opinion.
TOBIAS, J., dissents in part.
I respectfully dissent in part.
Because the appellant, the Board of Commissioners of the Orleans Levee District, appeals the granting of a motion for summary judgment, our de novo review requires us to ascertain whether a genuine issue of material fact exists. A genuine issue of material fact exists which precludes, for the present, the granting of the motion for summary judgment in its entirety of the appellees, Messrs. Fourroux, Betpouey, Hibbets, and Saia. The issue of the constitutional prohibition against the donation of public property is not, as the majority finds, moot, and I would remand for further proceedings on that issue.
*705 La.R.S. 38:336 permits the appellant to lease "lands reclaimed... under such terms and conditions and by such methods as the board may deem proper." The record on appeal is devoid of evidence that the property leased by the appellees, and for which each of the appellees sought in the 1994/1995 period three successive five-year options to extend their respective leases with the first option to extend to commence in the 2006/2007 time frame, consists of "lands reclaimed." This statutory provision must be read in the context of the constitutional prohibition against the donation of public property contained in Article VII Section 14, of the Louisiana Constitution.
The subject leaseholds had improvements made by the lessees, which improvements at the time of the negotiations between the appellant and appellee were in different conditions, varying from leasehold to leasehold. That is, none of the appellees would make further material improvements to their leaseholds if they knew that the appellant was not going to grant them the option to extend their leases beyond the expiration of their respective leases. The value of the improvements on each leasehold at the time that the options were formally granted in 1995 is not established by the record on appeal. That is, it is possible that the rentals established in the options may have been fair and reasonable in 1995 given the then existing condition of the leasehold improvements and the projected condition of the improvements when the leases would expire; if so, no violation of the constitutional prohibition against donation of public property would have occurred. The appellees themselves concede in brief filed in this court that a genuine issue of material fact exists; they state:
Finally, the third argument contained in the reply brief of the OLD/appellant is that the OLD/appellant provided sufficient factual support that the consideration it received for the Lease Amendments was inadequate, and therefore the Lease Amendments at issue are null and void under the Louisiana Constitution... The OLD/appellant argues simply that based on the improvements made to the leaseholds over time, that the OLD/appellant has not received sufficient consideration from the plaintiffs/appellees for the value of these improvements. In other words, the sole record evidence upon which the OLD/appellant bases its claim that it has received insufficient consideration for the Lease Amendments at issue is that the record contains "judicial admissions" in the pleadings by the plaintiffs/appellees that they have made improvements to the leaseholds. This argument falls for several reasons.
First, there is no record evidence that the amount of consideration received by the OLD does not take into account the value of the improvements. In other words, the various lessees of the water bottoms have been improving the boathouses since the leases were first issued in 1972. Yet, the OLD made no claim that it failed to receive adequate consideration for the past 30 years. Only now, when it suits its interest, does it allege that the consideration is inadequate. Yet, there is no evidence in the record as to what amount of rent would be adequate consideration in light of any improvements on the boathouses.
Second, there is no record evidence that the amount of consideration currently being received by the OLD/appellant for the leases at issue does not equal or exceed the speculative value of any future reversionary rights to acquire this depreciating property in the year 2007. It is incumbent upon the OLD/appellant when opposing a motion *706 for summary judgment on an issue upon it which it bears the burden of proof, (i.e., its reconventional demand that the leases are unconstitutional) to come forward and submit evidence that it did not receive adequate consideration with regard to the leases. There is no such evidence in the record. There is simply no testimony, no documents and no factual support anywhere in the record that the amount of consideration received by the OLD/appellant is insufficient and thereby renders these leases null and void pursuant to the Louisiana Constitution. Due to the complete lack of any such evidence in the record, the trial court properly granted summary judgment in favor of the plaintiffs/appellees. [Emphasis in original.]
The matters that the appellees address in the above quotation are not things that were ascertained at the time of the trial of the motion for summary judgment. The appellees put forth no evidence of the value of the improvements on their leaseholds at the time of their negotiations or signing of the lease amendments with the appellant. Nothing existed for the appellant to rebut. The issue must be resolved at trial. The motion for summary judgment was not ripe for disposition.
As a practical matter, the appellees would in 1995 make no further leasehold improvements of any significance without first obtaining options to extend their leases beyond 2007, especially in view of the remaining years left on the term of their leases and the location of the improvementssitting on the bed of Lake Pontchartrain, and arm of the sea, outside the hurricane protection levee in a marine environment where wear and tear by the elements can depreciate improvements rapidly. Nevertheless, both the appellant and appellees may have borne some obligation in 1995 to obtain opinion letters from counsel as the validity of the options to extend the leases, which would have negated the present problem relating to the constitutional prohibition of donation of public property as addressed by the 29 March 2000 opinion letter of the Louisiana Attorney General. The issue of whether the appellant is estopped from asserting the invalidity because of, inter alia, the delay between execution of the amendments and the dispute, would appropriately be addressed at trial.
I, therefore, would reverse the judgment in part and remand for further proceedings on the issue of the constitutional prohibition of donation of public property.