LEON A. CANNIZZARO, JR., Judge.
| Jhis case involves an appeal by certain of the original plaintiffs in this case. The appellants’ brief lists the appellants as Brad A. Adams, S.T. Alcus, III, Danny Allday, American International Travel, Inc., Alvin Baumer, Richard H. Barker, IV, Otto Candies, Jr., Fairview Realty L.L.C., Douglas and Dixie Depp, Candy Fleet Corporation, Clifford Duplessey, Kohlie Frantsen, G.M. Haydel, Dieter M. Hugel, Rustin D. Johnson, Cris Mandry, W.H. Metcalf, Jr., Douglas Moore, Christopher Quebedeau, Richard L. Rubin, William M. Ruddy, Jr., Lawrence Sintes (the “Appellants”), and Everett C. Pitmann, Jr.[1] Each of the Appellants[2] is appealing a trial court judgment denying a claim for declaratory relief regarding a lease agreement[3] executed by and between the Appellant and the Board of Commissioners of the Orleans Parish Levee District (the “District”).
| .FACTS AND PROCEDURAL HISTORY

Marina Leases

The District, a political subdivision of the State of Louisiana which is governed by the Board of Commissioners of the District (the “Board”), owned a marina located in New Orleans. The District was permitted by statute[4] to lease the land and water bottoms at the marina for the mooring of boats and the construction of boathouses. The marina contained “boathouse shells,” which were covered spaces designed to provide a place, where vessels could be moored, and there was space adjacent to the “boathouse shells” that could be used to construct boathouses.
*663 In 1971 and 1972, the District leased to the Appellants space in the marina that included the water bottoms and the land on which “boathouse shells” were built as well as the space for the construction of boathouses. The leases originally had terms of twenty years.[5]
Pursuant to a Board resolution that was adopted in 1973, the Appellants were given the option to extend their leases for three additional five-year periods. As consideration for the option, the Appellants agreed that the rent under their leases would be adjusted every five years based on increases in the Consumer Price Index. After the additional three five-year options were exercised, the expiration dates of the leases were in 2006 and 2007.
Many of the Appellants constructed substantial boathouses on the leased premises. Although the boathouses that were built on the premises were owned by the Appellants during the term of the lease, the lease agreements contained a ^reversion provision pursuant to which all boathouses on the leased premises became the property of the District upon the expiration of the leases.[6] During the terms of then-leases, the Appellants could sell the boathouses on the leased premises, and the purchaser of a boathouse would be assigned the rights under the seller’s lease. When the leases ended in 2006 or 2007, all of the boathouses would become the property of the District.
At the trial in the instant case, Albert Pappalardo, a professional realtor who advised the Board with respect to the District’s real estate holdings, testified that the closer it was to the expiration of the lease agreements, the more difficult it would be for the Appellants to sell the boathouses on the leased premises and to assign their leases. The value of the boathouses to the Appellants would diminish as the lease agreements approached their expiration dates. Thus, it was to the advantage of the Appellants to continue leasing the marina property as long as possible. Gary Benoit, an attorney employed by the District, who ultimately became senior counsel for the District, also testified, and his testimony agreed with Mr. Pappalar-do’s testimony on the diminishing value of the boathouses to the Appellants.
Because the boathouses that the Appellants had constructed at their own expense would belong to the District at the termination of the leases, the Board could then lease the marina property and the boathouses. Because the original leases did not take into account the value of the boathouses that the Appellants 14would construct and would own until the expiration of the leases, the rental value of the leased premises would increase greatly once the boathouses were owned by the District.

199⅛ Resolution

Mr. Pappalardo testified that some of the marina lessees approached him and some of the Board members about the possibility of extending the lease agreements beyond the 2006 and 2007 expiration dates. Mr. Pappalardo further testified that these lessees were concerned about “their ability to market their properties in the future.”
*664 In response to the lessees’ concerns about marketing the boathouses that they had constructed, the Board passed a resolution (the “1994 Resolution”) on February 23, 1994. The 1994 Resolution authorized the “granting of three additional five year options, with the cost to extend the first five year option to be $1,000, the cost to extend the second five year option to be $1,000, and the cost to extend the third five year option to be $2,000, under terms to be developed by the Marina Committee.” The 1994 Resolution further provided that the Board’s offer to grant the additional options would be open to all lessees “for a period of 90 days from the first of March, 1994.”

The Fourroux Lease Amendments

At the trial in the instant case, Mr. Benoit, the District’s attorney, testified that only six of the lessees of the marina sites responded to the option offered pursuant to the 1994 Resolution. Leases were executed by the responding lessees on a form that was prepared by Kermit A. Fourroux, one of the responding lessees. The record contains a letter from Mr. Fourroux to Mr. Benoit in which Mr. Fourroux states that he is enclosing an amendment to his lease that he drafted to | ¿incorporate the provisions of the 1994 Resolution. The lease amendment that Mr. Fourroux prepared included a specified rental amount of thirty cents per square foot of leased area.
The validity of the lease amendments executed by Mr. Fourroux and three other lessees of the marina property (the “Four-roux Leases”) was litigated, and this Court found that the Fourroux Leases were valid in Fourroux v. Board of Commissioners for the Orleans Levee District, 02-0374 (La.App. 4 Cir. 1/8/03), 837 So.2d 698. At the trial in the instant case, however, James P. Huey, the then Board president, testified that the Fourroux Leases “were done incorrectly and inappropriately.”

1996 Resolution

Mr. Benoit testified that because of the limited response to the option offer contained in the 1994 Resolution, the Board adopted another resolution on February 28, 1996 (the “1996 Resolution”). The 1996 Resolution was adopted in response to interest in additional lease options that was expressed by lessees who had not responded to the initial option offer made pursuant to the 1994 Resolution. The 1996 Resolution reopened to the lessees, who had not responded to the offer in the 1994 Resolution, the Board’s offer under the 1994 Resolution to grant three additional five-year lease options to the lessees. The offer remained open for a period of one hundred and twenty days, and most, if not all, of the lessees who had not accepted the option offer in 1994 did accept the offer in 1996. The only thing added to the 1994 Resolution by the 1996 Resolution was that the option fees would be payable on or before the date that the options were exercised.
| $000 Resolution
Mr. Benoit testified at the trial that the Board was not yet in a position to execute new leases or lease amendments with the Appellants until the Board had adopted a resolution authorizing the “terms to be developed by the Marina Committee” in accordance with the 1994 Resolution. He testified that the 1994 Resolution required the successor committee to the Marina Committee to develop the terms, including the new rental amounts, of the new leases. He further stated that the Board would then have to adopt the terms that had been developed before any new leases could be executed.
Mr. Pappalardo testified at the trial that he conducted a study on the market rental values of the marina property based on not *665 only the rental value of the land and water bottoms but also on the rental values of the boathouses on the leased premises, the ownership of which would revert to the District upon the expiration of the marina leases in 2006 and 2007. He used a price per square foot methodology in determining the rental values. Legal counsel for the District, the District’s staff, and Mr. Pappalardo prepared a report that was presented to the successor to the Board’s Marina Committee. The report contained recommendations for the terms of the lease agreements for the extension options that would begin in 2006 and 2007. The report was adopted by the successor committee and was recommended to the Board for its consideration.
Both Mr. Benoit and Mr. Pappalardo testified that the phrase “terms to be developed” that was used in the 1994 Resolution included the rental amounts for the new leases. Even Brad A. Adams, one of the Appellants, admitted at the trial that the “terms” of a lease are generally understood to include the amount of rent under the lease.
17Based on the recommendations of the successor committee to the Marina Committee and on an opinion of the Office of the Attorney General for the State of Louisiana to the effect that the Board was required to receive serious consideration for the new leases that took into account the value of the boathouses that would become the property of the District in 2006 and 2007, the Board adopted a resolution on September 20, 2000 (the “2000 Resolution”). The 2000 Resolution approved “the recommendations on rental rates and general terms for the Orleans Marina leases contained in the Reports submitted by the OLD [Orleans Levee District] Staff and Board’s Real Estate Consultant and Legal Counsel dated July 12, 2000 and July 19, 2000.” The 2000 Resolution also approved “a 30-year lease, consisting of an initial term of five (5) years and five (5) five-year renewal options, for the leaseholds in the Orleans Marina under the terms set forth in the Reports approved and adopted by the Board.”
In November of 2000, the Board wrote a letter to the Appellants enclosing a draft of a lease amendment prepared in accordance with the requirements of the 2000 Resolution. The letter also explained that the Appellants could elect to sign a néw thirty-year lease in lieu of the lease amendment. The letter further required the Appellants to give written notice of their intention to execute the new lease amendment or the thirty-year lease no later than January 2, 2001. Failure to give notice would result in the forfeiture of the extension options and of the right to execute a new thirty-year lease.
Within the applicable- time period for giving notice, the Appellants, through their attorney, notified the Board that they intended to execute the new lease amendments, but the letters notifying the Board also stated that the Appellants neither waived nor forfeited the right to exercise three five-year extension options |Ras offered under the 1994 Board Resolution. The only Appellants who executed lease agreements containing the rental and other terms adopted in the 2000 Resolution were Otto Candies, Jr., Candy Fleet Corp., Fairview Realty, L.L.C., and Clifford Duplessy (the “Transferee Appellants”).

The Transferee Appellants

The Transferee Appellants executed lease agreements that contained the terms and provisions that were approved in the 2000 Resolutions. The Transferee Appellants had purchased boathouses, and the Board would approve the assignments of the leases of the property where the boathouses were located only if the Transferee Appellants signed lease agreements con *666 taining the terms, including the rentals, that were included in the 2000 Resolution.

The Instant Case

The Appellants filed suit against the Board seeking, among other things, a declaratory judgment that the Appellants were entitled to sign lease agreements in the form of the Fourroux Leases, which did not include the increased rental rates adopted in the 2000 Resolution. The Board filed a reconventional demand seeking, among other things, a declaratory judgment that the Board had the legal right under the terms of the 1994 Resolution to adopt increased rental rates for the three five-year options authorized in the 1994 Resolution.

Trial Court Judgment

The trial court denied the Appellants’ request for a declaratory judgment. In her reasons for judgment, the trial court explained that the most recent amendments to the lease agreements that were executed by the Appellants (other than the Transferee Appellants) did not contain a provision addressing the rental to be paid pursuant to the 1994 Resolution.
19Therefore, the trial court judge reasoned that because there was no rental specified for the three five-year options terms that would begin when the leases otherwise expired in 2006 and 2007, there was no valid lease agreement that covered the option terms. The trial court judge based her conclusion on the legal requirement that for a lease to be valid, three things are necessary: the thing to be leased, the amount of the rental, and the consent of the parties. La. Civil Code art. 2668. The trial court judge found in the instant case that there was no specified rental amount for the option terms. Thus, there was no agreement of the parties.
DISCUSSION
The Appellants make five arguments in their appellate brief. They assert in then-arguments that the trial court judge erred in her decision and in the reasoning upon which her decision was based.
Argument No I: The trial court improperly found that the offer to renew was void.
The Appellants argue that because the option agreements were for extensions of existing leases, the rental set forth in the existing leases was the applicable rental. While we agree that the options authorized in the 1994 Resolution would extend the existing leases, we disagree that the rental set forth in the existing leases would be the rental for the options. The 1994 Resolution clearly stated that the Board had authorized three additional five-year options to extend the marina leases, and the cost of each of the three options was stated. The 1994 Resolution also stated, however, that the options would be “under terms to be developed by the Marina Committee.” The terms of a lease, whether it is a lease extension or an original lease, include the rental under the lease. Clearly, the 1994 | inResolution contemplated that the rental terms of the lease extensions were to be developed in the future by the Marina Committee.
Additionally, the last amendment to the existing leases that the Appellants (other than the Transferee Appellants) executed contained the following provision:
III.
Lessee recognizes and understands that Board Resolution No. 11-022394 [the 1994 Resolution] provides that the granting of three (3) additional five (5) year options to the South Roadway and West Roadway boathouse leases, and for the purposes of this Amendment, to this Lessee in particular, is done under *667 terms to be adopted by resolution of the Board of Commissioners of the Orleans Levee District. Lessee agrees that this Amendment is subject to and conditioned upon the above-mentioned terms. The parties agree that, upon the development of said terms, as ratified by the full board, a Sixth Amendment shall be entered reflecting these terms. Lessor agrees that such terms, while applicable and determinative of the granting of the aforesaid options, shall not displace, disturb, alter or change in any manner the terms indicating the number of additional options, or their length, or the requirement of the payment of the Option Fee, or of any other terms as stated both in this Amendment and in Board Resolution No. 11-022394.
This provision clearly sets forth the intent of the parties that the terms of the lease extensions were to be developed and would be finalized only after the Board had adopted a resolution setting forth the exact terms of the lease extensions. The amount of the rental for the option terms was not contained in either the lease amendment or the 1994 Resolution. Therefore, the lease rental was one of the terms that was required to be finalized and authorized by the Board before the lease options could be confected.
The lease amendment provision quoted above clearly contemplated that the rental and other terms of the options would be determined in the future and would Inbe memorialized in writing. Hence, there was the reference to the “Sixth Amendment” that would reflect the terms, including the rental for the option periods, for the lease options. We find that the Appellants’ argument on this issue is without merit.
Argument II: The Fourth Circuit has already held that the offer to extend/renew the lease was unambiguous and properly contained the rental terms.
The Appellants argue that Fourroux v. Board of Commissioners for the Orleans Levee District, 02-0374 (La.App. 4 Cir. 1/8/03), 837 So.2d 698, should govern the lease extensions to be executed by the Appellants. The lessees under the Four-roux Leases executed a lease amendment that was clearly distinguishable from the lease agreements executed by the Transferee Appellants and the lease amendments executed by the rest of the Appellants. The lease agreements executed by the Transferee Appellants contained the rental terms and other provisions adopted by the Board in the 2000 Resolution. The lease amendments signed by the remainder of the Appellants contained no rental amount, whereas the lease amendments signed by the lessees under the Fourroux Leases contained a specified amount for the rent.
The lease amendments executed by the lessees under the Fourroux Leases[7] provided a rental price for the option periods of thirty cents per square foot for the total leased area, which rental price was to be adjusted every five years according |1?.to changes in the Consumer Price Index. The amendments executed by the lessees under the Fourroux Leases stated that “[bjeginning with the first additional option period, the rental shall then be adjusted in accordance with the Consumer Price or other similar Index on October 17, 2010, October 17, 2015 and October 17, 2020.” Thus, it is clear from the lease amendment that the rental amount stated in the amendment would apply to the extension *668 options. Otherwise, there was no need to refer to the Consumer Price Index in any years beyond 2006 or 2007, when the Four-roux Leases would otherwise expire. Additionally, this Court recognized that fact when it stated in the Fourroux case that in October of 1995, “each individual Appellee signed an amendment to the original lease (hereinafter the “Lease Amendments”) that expressly provided for the amount of rent to be paid.” 02-0374, p. 2, 837 So.2d at 700
Unlike the lease amendments signed by the lessees under the Fourroux Leases, the lease amendments signed by the Appellants (other than the Transferee Appellants) did not specify an objectively determinable rental rate for the option periods. Instead, the rental terms were to be developed by the Marina Committee and adopted by the Board. Therefore, these lease amendments did not comply with the requirement of La. Civil Code art. 2676 that the rent “shall be fixed by the parties in a sum either certain or determinable through a method agreed by them” or that the rent may “be fixed by a third person designated by them.”
There is no evidence in the record before us that any of the Appellants other than the Transferee Appellants executed a lease amendment that specified a rental rate. Therefore, a valid lease contract for the option periods at issue in the instant case does not exist with respect to the Appellants other than the Transferee Appellants. Based on the distinction between the lease amendments signed by the |ialessees under the Fourroux Leases and the lease amendments signed by the Appellants (other than the Transferee Appellants), we find that the Fourroux case is inapplicable to the instant case. In the case of the Transferee Lessees, we find that they have executed a valid lease agreement that is binding upon them. None of the Appellants is entitled to a declaratory judgment to the effect that they are entitled to execute lease agreements based on the rental rates and other terms set forth in the amendments executed by the Fourroux Lessees.
Argument III. The District cannot unilaterally alter the terms of the lease.
The Appellants argue that the Board has unilaterally altered the terms to which the Appellants agreed. The Appellants (other than the Transferee Appellants) never agreed to the terms for the option periods except as expressly set forth in the lease amendment quoted above and in the 1994 Resolution. Although the Appellants argue that the terms of the amendments signed by the lessees under the Fourroux Leases are the terms to which the Board and the Appellants mutually agreed regarding the option periods, we do not find that to be the case. The amendments that were signed by the Appellants (other than the Transferee Appellants), not the Four-roux Leases, set forth the mutual agreement of the parties.
, The lessees who signed the Fourroux amendments executed a lease amendment in the form of a counteroffer prepared by Mr. Fourroux. That counteroffer contained a rental amount for the option terms extending beyond 2006 and 2007. The amendment signed by the Appellants, however, did not contain a rental amount. Had the Appellants accepted the option offer in the 1994 Resolution when the lessees under the Fourroux Leases did, the Appellants might well have signed lease amendments in the form of the Fourroux Leases. Instead, l14they signed a lease amendment that did not contain the same terms as the Fourroux Leases. Therefore, this argument has no merit.
Argument IV: The actions of the District violate the Equal Protection Clause.
The Appellants argue that they have been denied equal protection by the Dis *669 trict in violation of U.S. Const. Amend. XIV and La. Const. art. 1, § 3. Section 1 of the Fourteenth Amendment to the United States Constitution provides in relevant part that “[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.” La. Const, art. 1, § 3 provides in relevant part as follows:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations
In Morgan v. Whaley, 99-1103 (La.App. 4 Cir. 5/31/00), 765 So.2d 408, this Court considered the rights of a citizen to equal protection in the context of the rules and fees imposed by the Board of Commissioners of the City Park Improvement Association and its Tennis Committee for the use of the tennis courts at City Park in New Orleans. The plaintiffs alleged that the tennis courts and related facilities at the park were operated under arbitrary guidelines and regulations that were not uniformly applied to all citizens, including tennis instructors, such as the plaintiffs, who were not members of the City Park teaching staff. The plaintiffs further alleged that their constitutional rights were thereby violated.
This Court in Morgan stated:
|1sBoth the Fourteenth Amendment of the United States Constitution and Article I, Section 3 of the Louisiana Constitution provide that all persons are entitled to equal protection of the law. These provisions mandate “that persons similarly situated receive like treatment.” Whitnell v. Silverman, 95-0112, pp. 9-10 (La.12/6/96), 686 So.2d 23, 29-30. While claims may be subject to a different analysis under the federal and state guarantees, a minimal standard of review applies under both provisions where, as here, there is no fundamental right, suspect class, or enumerated characteristic alleged as the basis for discrimination. Progressive Security Ins. Co. v. Foster, 97-2985, pp. 17-19 (La.4/23/98), 711 So.2d 675, 685-87. Under these standards, an individual claiming an equal protection violation has the burden of establishing that a discriminatory classification “is not rationally related to any legitimate governmental interest” or that it “does not suitably further any appropriate state interest.” Id.
99-1103, pp. 10-11, 765 So.2d at 414. This Court found that the rules and regulations in the Morgan case did not violate the plaintiffs’ constitutional right to equal protection.
In Moore v. Ware, 01-3341 (La.2/25/03), 839 So.2d 940, the Louisiana Supreme Court stated that “the equal protection provisions of the state and federal constitutions do not require absolute equality or precisely equal advantages.” 01-3341, p. 14, 839 So.2d at 949. In Med Express Ambulance Service, Inc. v. Evangeline Parish Policy [sic] Jury, 96-0543 (La.11/25/96), 684 So.2d 359, the Supreme Court also stated:
[T]he crux of the Due Process Clause of the Fourteenth Amendment, is protection from arbitrary and unreasonable action and when the ordinance or statute does not affect fundamental rights, but rather is merely economic or social regulation, it need only have a rational relationship to a legitimate governmental interest.
96-0543, p. 8, 684 So.2d at 365, citing City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).
In Progressive Security Insurance Co. v. Foster, 97-2985 (La.4/23/98), 711 So.2d *670 675, the Louisiana Supreme Court discussed the scrutiny to be given to the disparity in treatment in connection with an alleged violation of La. Const. art. 1, § 3. The Supreme Court stated:
La. Const. Art. I, § 3 provides for three levels of constitutional review or scrutiny. Laws which classify individuals based on race or religious beliefs are repudiated completely. An intermediate level of scrutiny is reserved for laws which classify persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliation. The lowest level of scrutiny applies to laws which classify persons on any basis other than those enumerated in La. Const. Art. I, § 3. Such laws need only be rationally related to a legitimate governmental purpose, and a person attacking the constitutionality of such a classification has the stringent burden of demonstrating that the law does not suitably further any appropriate state interest.
97-2985, p. 17, 711 So.2d at 686 (emphasis in original).
Based on the foregoing we find that the proper level of scrutiny to be given to the claim of denial of equal protection in the instant case is the lowest level, because the parties in the instant case were classified on a basis other than those enumerated in La. Const, art. 1, § 3. The distinction between the two classifications of parties in the instant case, the lessees under the Fourroux Leases and the Appellants, is simply based on the dates upon which the parties indicated their acceptance of an offer to extend their marina leases and on the lease amendments those parties executed. Thus, if the grounds upon which the distinction was made was rationally related to a legitimate government purpose, the Appellants’ equal protection claim must fall.
We find that there were rational bases upon which the distinction was made between the lessees under the Fourroux Leases and the Appellants. The lessees l17under the Fourroux Leases accepted the offer of the additional lease options during the period for acceptance set forth in the 1994 Resolution whereas the Appellants waited to do so until after the 1996 Resolution reopened the period. The first lessees to accept the option offer could legitimately be treated differently from those who waited to accept the option offer.
Additionally, there was testimony at the trial to the effect that the lease amendments in the Fourroux case were, in fact, executed in error and should not have been executed by the Board. It appears that was the case, because the 1994 Resolution clearly contemplated the development by the Marina Committee of lease terms for the option periods, but when the lease amendments in the Fourroux case were executed, the Marina Committee had not yet developed those terms. The Board was certainly not required to compound its earlier error by allowing the Appellants to sign the same form of lease agreement that had been erroneously executed previously.
Further, the lease amendments in the Fourroux case were executed prior to the time the Board obtained an opinion of the Louisiana attorney general that indicated that the Board would be making an unconstitutional donation of public property were it not to charge rent during the option terms beginning in 2006 and 2007 based on the value of the boathouses on the marina property. Although this Court in the Fourroux case did not decide the constitutional issue of whether there might be an unconstitutional donation of public property under the Fourroux Leases, and although we need not and will not do so now, the fact that the Board relied on the *671 opinion constitutes a rational basis for treating the lessees under the Fourroux Leases differently from the Appellants.
|1RWe find that the Appellants were not denied equal protection. Therefore, this argument is without merit.
Argument V: The trial court failed to address the Appellants’ Alternative Claims for Damages.
The Appellants argue that they should be compensated for any amounts expended on the boathouses after they accepted the options that are at issue in the instant case. The Appellants argue that because they expected to lease the marina sites until 2022 under the options, they should be compensated when they lose possession of the leased premises if the lease agreements ■ terminate earlier. The 1994 Resolution clearly stated that the lease options would be on terms to be developed in the future by the Marina Committee. Therefore, when the Appellants made improvements to the boathouses after 1996, prior to the confection of an agreement setting forth the terms that were to be developed, they should have known that there was a possibility that they might not be able to come to an agreement with the Board and that, in such a case, the ownership of the boathouses would become vested in the Board at the expiration of their leases in 2006 or 2007. We find this argument to be wholly without merit.
Argument VI: The trial court failed to address Appellants’ constitutional claims.
The Appellants argue that the re-versionary provision of the marina leases would result in a taking without compensation in violation of La. Const, art. 1, § 4(B)(1), which provides in relevant part that “[pjroperty shall not be taken ... by the state or its political subdivisions except for public purposes and with just compensation paid to the owner....” The Appellants and the Board entered into a lease agreement pursuant to which ownership of any improvements constructed on |1flthe leased premises would become the property of the Board upon the termination of the lease agreement.
There was testimony at the trial that a reversionary provision such as the one in the lease agreements in the instant case is a common provision in leases. The Appellants entered into an arm’s length transaction with the Board, and there was no taking without compensation. In fact, the Appellants benefited from being able to lease prime real estate upon which they could build boathouses for :their enjoyment, and they knew from the beginning that ownership of the boathouses would vest in the District when the leases expired. Further, there was testimony at the trial that the increase in rentals based on the Consumer Price Index did not result in rentals at the market rate, because the increase in the value of the leased premises was not necessarily related to the increase in the Consumer Price Index. The Appellants received the benefit of their lease agreement with the Board. We find that this argument is without merit.
CONCLUSION
We agree that declaratory judgment in the instant case should have been denied to the Appellants. The judgment of the trial court is, therefore, affirmed.
AFFIRMED.
KIRBY, J., concurs in part and dissents in part and assigns reasons.
GORBATY, J., dissents.

. The Appellants are the parties against whom the trial court judgment was rendered, although originally there were other plaintiffs in the suit. After the appeal was lodged, the claims of three of the plaintiffs named in the trial court judgment, Everette C. Pitmann, Jr, Kohlie Frantzen, and G.M. Haydel, were dismissed with prejudice.

. All but one of the Appellants were successors in interest to the original lessees under the lease agreements. Therefore, depending on the context in which it is used, the term “Appellants” may include the original lessees under the lease agreements or the successors in interest to the original lessees or both.

. Representative lease agreements, rather than all of the lease agreements with all of the Appellants, were introduced into evidence.

. La. R.S. 38:336(B)(4).

. Because some of the original leases began in 1971, and others began in 1972, the original leases expired either in 1991 or 1992.

. The leases provided:
At the expiration of this lease or the cancellation or termination thereof for other lawful cause, the title to all improvements or construction placed on the leased site by Lessee, shall, ipso facto, be vested in the Lessor, without payment or compensation for the costs or value thereof.

. A lease amendment dated October 17, 1995, and signed by Kermit A. Fourroux was entered into evidence in the instant case as an example of the Fourroux Leases that had been signed.