# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 14, 2011

No. 10-30420

Lyle W. Cayce
Clerk

DIETER M. HUGEL,

Plaintiff - Appellant

v.

SOUTHEAST LOUISIANA FLOOD PROTECTION AUTHORITY - EAST,
Orleans Levee District, Division of Non-Flood Assets (OLD); ORLEANS
LEVEE DISTRICT, DIVISION OF NON-FLOOD ASSETS,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-4215

Before GARZA, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Dieter M. Hugel, a lessee of certain land and water bottoms at the Orleans
Marina in New Orleans, Louisiana, appeals the district court's dismissal of his
42 U.S.C. § 1983 action against the Orleans Levee District ("Levee District"), his
lessor. The district court concluded that Hugel's cause of action was barred

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-30420

under Louisiana's doctrine of res judicata because it "existed" at the time of final judgment in a previous case between the parties, in *Adams v. Board of Commissioners for Orleans Levee District*, 966 So. 2d 660 (La. Ct. App. 2007). But the district court erroneously construed Hugel's cause of action in this case, thereby imbuing the correctness of its res judicata analysis with doubt. On this limited record, we cannot make a satisfactory determination whether Hugel's claims are in fact barred by res judicata or warrant dismissal on any other ground. Because in Louisiana "any doubt concerning application of the principle of res judicata must be resolved against its application," *Kelty v. Brumfield*, 633 So. 2d 1210, 1215 (La. 1994), we VACATE the district court's judgment and REMAND for further proceedings.

I

In *Adams*, Hugel and other lessees sued the Levee District in state court over the Levee District's decision to impose higher rental terms.[1] Hugel's lease, like many of the other Marina lessees', was originally set to expire in 2006.[2] In 1994 and 1996, the Levee District passed resolutions permitting the lessees to further extend their lease agreements by 15 years, "under terms to be developed by the Marina Committee." *Adams*, 966 So. 2d at 664. The few lessees who responded to the 1994 resolution received favorable lease terms.[3] Hugel and the remaining lessees responded to the 1996 resolution believing that they would receive the same favorable terms. But the Levee District adopted higher rental

---

[1] The defendant in *Adams* was the Board of Commissioners of the Levee District, which managed the leaseholds until 2007, when the Louisiana legislature abolished the Board. For simplicity, in this opinion we refer to the Board and Levee District collectively as the Levee District.

[2] Hugel has leased Marina property from the Levee District since 1984.

[3] These lessees executed their lease options with an amendment that specified a fixed rental amount. The Louisiana Fourth Circuit Court of Appeal held that this amendment was valid in *Fourroux v. Board of Commissioners for Orleans Levee District*, 837 So. 2d 698 (La. Ct. App. 2003). Hugel was not a plaintiff in *Fourroux.*

terms for the lease agreements authorized by the 1996 resolution, and the lessees' suit in *Adams* followed.

The Levee District's decision to impose higher rental terms resulted in large part from an opinion issued in 2000 by the Louisiana Attorney General. The Levee District's existing lease agreements contained a reversion clause specifying that a lessee owned any improvements, such as a boathouse, made to her leased property during the term of her lease; but that ownership vested in the Levee District when the agreement ended. Hugel, like many of his fellow lessees, constructed a substantial boathouse on his leasehold, and his rental term did not reflect the value of his boathouse. After offering to extend the lessees' agreements by another 15 years, the Levee District requested the Attorney General's opinion on whether it was required to increase the lessees' rental terms to account for the leasehold improvements. The Attorney General answered in the affirmative. Because extending the lease terms would prevent the Levee District from taking ownership of the improvements, the Attorney General advised that the Levee District was required to account for the value of the improvements in its new rental terms. Otherwise, the Levee District's extension of the leases would be subject to challenge as a prohibited donation under Article 7, Section 14(A) of the Louisiana Constitution.

The lessees in *Adams* raised multiple causes of actions against the Levee District. They sought a declaratory judgment that they were entitled to the favorable lease terms provided in 1994; challenged the Levee District's rental increase under the Equal Protection Clause; and alleged that the reversion clause in the existing lease agreements effected an improper taking under the state and federal constitutions. They also requested a declaratory judgment that the Levee District's attempts to base future rental amounts on the value of the lessees' improvements constituted an improper taking under the state and federal constitutions.

No. 10-30420

The Louisiana trial court entered judgment in favor of the Levee District, and the Louisiana Fourth Circuit Court of Appeal affirmed. *Adams*, 966 So. 2d at 671. Both courts concluded that the lease options offered by the Levee District in its 1994 resolution were unenforceable for lack of a determinable rental term, as they were subject to "terms to be developed by the Marina Committee." Neither court addressed Hugel's takings claim with respect to the higher rental terms. *Adams* became final when the Louisiana Supreme Court denied the lessees' application for writs in December 2007.

In July 2008, after unsuccessfully attempting to negotiate his lease terms, Hugel entered into a new lease with the Levee District. One year later, he filed the underlying action under § 1983, alleging that the higher rental terms in his lease constituted an impermissible taking of his property without just compensation, in violation of the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, Section 4 of the Louisiana Constitution. His complaint specified that the July 2008 lease commenced the actual "taking" of his property. Invoking *Adams*, the Levee District moved to dismiss Hugel's claims under Federal Rule of Civil Procedure 12(b)(6) as barred by res judicata.[4] The district court granted the motion, concluding in part that Hugel's cause of action in this case "existed" at the time of final judgment in *Adams*.

II

A

"The res judicata effect of a prior judgment is a question of law that this court reviews de novo." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559,

---

[4] The defendants also moved to dismiss the Flood Protection Authority as a defendant because it allegedly "has no ownership, management, authority or control over the matters asserted in" the complaint. The district court did not address this argument and neither do we.

No. 10-30420

571 (5th Cir. 2005). We also review de novo a district court's dismissal under Rule 12(b)(6).[5]

To determine whether Hugel's claims are barred by res judicata, we apply Louisiana's res judicata doctrine. *See Prod. Supply Co. v. Fry Steel Inc.*, 74 F.3d 76, 78 (5th Cir. 1996) ("A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." (internal quotation marks omitted)); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000) (noting that to determine preclusive effect of state court judgment in subsequent federal lawsuit, "a federal court must refer to the preclusion law of the state in which judgment was rendered").

The doctrine of res judicata in Louisiana is set forth in Louisiana Revised Statute § 13:4231, which was amended in 1990 to provide in relevant part:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the follow extent:
> . . .
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

LA. REV. STAT. § 13:4231(2). Based on the above statutory language, the Louisiana Supreme Court "has established the following five elements that *must*

---

[5] We have noted that "generally a res judicata contention cannot be brought in a motion to dismiss." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (citing *Test Masters Educ. Servs., Inc.*, 428 F.3d at 570 n.2)). *But see* 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 at 721, 728 (3d ed. 2004) ("[A]ffirmative defenses that have been considered on a motion to dismiss under Rule 12(b)(6) include . . . the barring effect of res judicata and related preclusion principles.") (citing numerous decisions). Given our disposition of this appeal, we need not decide the propriety of bringing a res judicata defense in this manner.

No. 10-30420

be satisfied for a finding that a second action is precluded by res judicata."
*Chevron U.S.A., Inc. v. State*, 993 So. 2d 187, 194 (La. 2008) (emphasis added).
These elements are: "(1) the judgment is valid; (2) the judgment is final; (3) the
parties are the same; (4) the cause or causes of action asserted in the second suit
existed at the time of final judgment in the first litigation; and (5) the cause or
causes of action asserted in the second suit arose out of the transaction or
occurrence that was the subject matter of the first litigation." *Id.* (quoting
*Burguieres v. Pollingue*, 843 So. 2d 1049, 1053 (La. 2003)).[6] Only the fourth and
fifth element are disputed in this case.

The Louisiana Supreme Court has emphasized that "[t]he doctrine of res
judicata cannot be invoked unless all its essential elements are present . . . and
each necessary element must be established beyond all question. " *Kelty v.
Brumfield*, 633 So. 2d 1210, 1215 (La. 1994). This is because "[t]he doctrine of
res judicata is stricti juris." *Id.* Indeed, "any doubt concerning application of the
principle of res judicata must be resolved against its application." *Id.*; *see also
St. Paul Mercury Ins. Co.*, 224 F.3d at 437 ("When determining if res judicata
applies, Louisiana courts have narrowly construed the doctrine's scope. . . . Any
doubt as to compliance with the requirements of res judicata is to be resolved in
favor of maintaining the second action.").

B

In concluding that Hugel's cause of action in this suit "existed" at the time
of final judgment in *Adams*—as required under the fourth element of Louisiana's
res judicata doctrine—the district court apparently believed that the accuracy
of the Attorney General's opinion was "central" to Hugel's cause of action. The

---

[6] Although the "chief inquiry" under the doctrine "is whether the second action asserts
a cause of action which arises out of the transaction or occurrence that was the subject matter
of the first action," this "is not the only inquiry." *Burguieres*, 843 So. 2d at 1053. Indeed, the
absence of just one of the five elements precludes a finding that the res judicata applies. *Id.*

No. 10-30420

district court thus stated: "As to the fourth element . . . [Hugel] must prove that the Attorney General Opinion in regards to the prohibited donation issue did not exist at the time of judgment in *Adams*." But this construction of Hugel's cause of action places undue weight on the Attorney General's opinion; it also misses the point. The cause of Hugel's alleged taking is *not* the Attorney General's opinion; it is the Levee District's actual imposition, beginning in July 2008, of higher rental terms. While Hugel's complaint with the Attorney General's opinion is certainly relevant to his takings claim, it is immaterial to whether a taking has in fact occurred under the new lease terms. In other words, whether Hugel's cause of action—his takings claim—existed at the time of final judgment in *Adams* does not at all depend on when the Attorney General's opinion issued.[7]

Instead, to determine whether a cause of action previously existed, we must consider when the cause of action arose or accrued. "A cause of action which arose after the rendition of the final judgment could not have been asserted earlier and would not be precluded by the judgment." LA. REV. STAT. § 13:4231 cmt. e (1990); *see also Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 385 (5th Cir. 2007) ("[I]f [party's] causes of action did not accrue until after the Louisiana court entered final judgment against it, then [party's] causes of action did not exist at the time of final judgment . . . ." (internal quotation marks omitted)).

On this limited record, we do not find sufficient information to determine whether Hugel's takings claim "existed" at the time of final judgment in *Adams*; or whether, as Hugel argues, the claim came to "exist" with the commencement of Hugel's July 2008 lease. Accordingly, we cannot conclude that this fourth element—that Hugel's cause of action existed at the time of final judgment in

---

[7] Similarly, the district court erroneously concluded that the Louisiana Fourth Circuit Court of Appeal had previously, in *Adams* and *Fourroux*, declared the inverse condemnation issue "moot"; in neither case did the court address the claim Hugel brings in this action.

No. 10-30420

*Adams*—was "established beyond all question" in the district court.[8] *Kelty*, 633 So. 2d at 1215.

## III

Because the district court's determination that res judicata bars Hugel's claim is not supported by a clear, unequivocal indication in the record that Hugel's cause of action in this case existed at the time of final judgment in *Adams*, we must vacate that determination. We remand for further consideration of whether Hugel's cause of action under the Takings Clause "existed" at the time of final judgment in *Adams*, and for further proceedings.

VACATED and REMANDED.

---

[8] We also conclude that the district court's discussion of res judicata's fifth element—whether the cause of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first—being incomplete, warrants further analysis on remand.